Florence S. Hyman, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 106972, 108215.    Promulgated April 13, 1943.

*C. H. Lieb, Esq.*, for the petitioner.
*Harold D. Thomas, Esq.*, for the respondent.

914

OPINION.

BLACK, *Judge:* We shall first consider the question of whether the respondent erred in determining that the income of the John Arthur Hyman trust in the amount of $2,300 is taxable to petitioner under

section 22 (a) of the Internal Revenue Code.[1]  The amendments thereto by the Public Salary Tax Act of 1939 are not here material. The answer to this inquiry depends upon whether the situation here presented falls within or without the ambit of *Helvering* v. *Clifford*, 309 U. S. 331.  At the hearing counsel for the respondent made the statement that the $2,300 of income in question under this issue "may also be taxable to the petitioner" under section 166 or 167 of the Code, but in his brief he discussed only the taxability under section 22 (a) and stated "that any further possibilities under section 166 or 167 need not be discussed."  In any event the respondent contends that $1,000 of the $2,300 income representing the special dividend of $1 per share declared prior to the creation of the John Arthur Hyman trust but payable thereafter is taxable to petitioner under *Helvering* v. *Horst*, 311 U. S. 112.

Petitioner, in contending that the situation here presented falls outside the ambit of the *Clifford* case, relies strongly upon *Commissioner* v. *Jonas*, 122 Fed. (2d) 169, saying in her brief that this case "is almost on all fours with the case at bar."

We think the respondent's determination must be sustained upon the authorities of *Helvering* v. *Clifford*, *supra*, and *Commissioner* v. *Buck*, 120 Fed. (2d) 775.  In the latter case the settlor conveyed certain shares of stock to a bank, as trustee, to pay the income to his wife for life, and on her death, to pay the income and ultimately the principal to his children or their descendants.  He retained a power "to alter or amend in any respect whatsoever" the provisions relating to the distribution of the income or principal, except that this power could not be exercised for his own benefit.  In the event that a beneficiary predeceased him, the share held for that beneficiary was to return to Buck, the settlor.  Buck also retained the power to remove the trustee and reserved the right to vote any stock or to direct the trustee how to vote it.  In holding that the settlor was taxable on the income of the trust under section 22 (a) of the Revenue Acts of 1932 and 1934 (identical with the material provisions of the same section of the Code set out in footnote 1) the Court enumerated the significant factors to be considered as follows:

That the donees are members of the donor's family, of which he is the head; that he has "income in excess of normal needs"; that, during his life, he is unrestricted as to the disposition of any part of the corpus or income, excepting that he may not divert any portion for his personal use; that, while he lives,

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

he has entire control of the management of the corpus, and, at his pleasure, may remove the trustee and appoint another.

In the instant proceeding the named income beneficiary was the settlor's only child and the trustees were the settlor and her husband, thus presenting the "intimate family group" referred to in the *Clifford* case. At the time of the creation of the trust, petitioner's separate estate was something above a half million dollars. The maximum life of the trust was a little over twelve years. Upon its termination "the principal of the trust and all accumulated and unexpended income therefrom shall be paid over to the Settlor, to her own use absolutely and forever   *   *   *." And in the meantime, according to article I of the trust instrument:

The Settlor reserves the right to designate any beneficiary or beneficiaries, other than herself, to receive the income and/or principal in place and stead of the beneficiaries named herein.

Broad powers of management are given by the trust instrument, the trustee or trustees being permitted to exercise practically all of the powers that might lawfully be exercised by an individual owning such securities or obligations and acting in her own right or interest. Furthermore, the settlor reserved the power to remove any trustee and appoint another. We think the summation of these factors left petitioner as the virtual owner of the corpus of the trust for the purposes of section 22 (a), *supra*, and we have so found as an ultimate finding of fact.

Petitioner's husband testified that the purpose of the trust was to provide the son with sufficient funds to complete his college and professional education and to make him financially independent until he was capable of earning his own living, but petitioner did not make that purpose secure. She reserved the power to cut her son off at any time she pleased and to designate any other beneficiary or beneficiaries, other than herself, "to receive the income and/or principal" of the trust estate. As stated by the court in *Brown* v. *Commissioner*, 131 Fed. (2d) 640 (certiorari denied, 318 U. S. 767, affirming 46 B. T. A. 782:

*   *   * We think that a settlor who is a person of means and who can control the spending of a fund, which she has set up, in every respect except spending it for herself is sufficiently the "owner" of the fund to make its income taxable to her under section 22 (a). The case, upon its facts, is not unlike that of *Commissioner of Internal Revenue* v. *Buck*, *supra*, which we believe to have been correctly decided.

We do not agree with the petitioner that *Commissioner* v. *Jonas*, *supra*, is almost on all fours with the case at bar. There the settlor had no power of control or management of the trust property or of the disposition of the income and the trustees were not members of the Jonas family. Neither did the settlor reserve any right to change,

modify, or revoke the trusts there involved. The only power that the settlor did reserve was the right to appoint a trustee or trustees if a vacancy should occur in such position or if an existing trustee should fail to act as such. Such factors are entirely different from the factors present in the instant proceeding, and we do not regard the *Jonas* case as at all controlling.

Another case upon which petitioner relies in her brief in support of her contention that *Helvering* v. *Clifford, supra,* and section 22 (a) are not applicable, is *Stuart* v. *Commissioner,* 124 Fed. (2d) 772, in which the court said in reversing the Board:

We think the Board erred in holding that the petitioner John Stuart was liable under Section 166 (2) of the Act, and from what we have said we are of the opinion that he was not liable under Section 167 (a) which deals with revocable trusts, or under Section 22, which deals with gross income.

Since the filing of petitioner's brief the Supreme Court has decided *Helvering* v. *Stuart,* 317 U. S. 154, and it held as to the John Stuart trust that the Seventh Circuit was right in holding that sections 166 and 167 were not applicable. However, the Supreme Court remanded the *John Stuart* case to the Board to determine whether or not the grantor is taxable under section 22 (a). Thus it will be seen that the decision of the Seventh Circuit in the *John Stuart* case that section 22 (a) was not applicable is no longer authority on that point. In the instant case we are basing our decision squarely under section 22 (a), and we find nothing in the Supreme Court's decision in the *Stuart* case which would throw doubt upon the Second Circuit's decision in *Commissioner* v. *Buck, supra,* which we have already cited, and upon which we rely in support of our decision.

We sustain the respondent's determination upon this issue. It thus becomes unnecessary to decide whether in any event $1,000 of the $2,300 income is taxable to petitioner. We hold the entire $2,300 taxable to petitioner.

We consider next the question whether the respondent erred in determining that the dividends in the amount of $13,000 declared and paid after petitioner had assigned to her husband the right to receive all dividends which may be declared and paid between the date of the assignment and December 31, 1939, on 10,000 shares of the capital stock of Climax Molybdenum Co. is taxable income to petitioner. The dividends in question were paid to petitioner's husband in accordance with the assignment executed on December 6, 1939.

The respondent as authority for his determination cited and relies upon *Helvering* v. *Horst,* 311 U. S. 112. Petitioner contends that *Blair* v. *Commissioner,* 300 U. S. 5, is controlling.

In the *Horst* case, the owner of negotiable bonds detached from them negotiable interest coupons shortly before their due date and

delivered them as a gift to his son, who in the same year collected them at maturity. The Supreme Court held that the interest when collected by the son was taxable income to the father, who was the owner of the bonds. In the *Blair* case, the beneficiary of a trust had assigned a share of the income to another for life without retaining any form of control over the interest assigned. The Supreme Court construed the assignment as a transfer *in praesenti* to the donee of a life interest in the corpus of the trust property and held in consequence that the income thereafter paid to the donee was taxable to him and not the donor.

We agree with the respondent that the principles enunciated in the *Horst* case are controlling, since petitioner continued to own the income-producing property. The Supreme Court in the *Horst* case distinguished the *Blair* case upon that ground. In this connection the Supreme Court said:

* * * In the circumstances of that case [the *Blair* case] the right to income from the trust property was thought to be so identified with the equitable ownership of the property from which alone the beneficiary derived his right to receive the income and his power to command disposition of it that a gift of the income by the beneficiary became effective only as a gift of his ownership of the property producing it. Since the gift was deemed to be a gift of the property the income from it was held to be the income of the owner of the property, who was the donee, not the donor * * *.

Petitioner, in contending that the principles laid down in the *Horst* case have no application here, stresses the difference between a bond carrying a definite commitment for the payment of interest and a share of stock upon which there is no commitment or obligation to pay a dividend until one is declared, and emphasizes the fact that in the instant proceeding the assignment was made before the dividend was declared. We do not think these differences are important where the income-producing property itself was not assigned. In *Harrison* v. *Schaffner*, 312 U. S. 579, the Supreme Court again applied the principles of the *Horst* case and held that where a life beneficiary of a testamentary trust in December 1929 assigned to certain of her children specified amounts in dollars from income of the trust for the year following the assignment, and made a like assignment to her children and a son-in-law in November 1930, the assigned income, which was paid by the trustees to the several assignees, was taxable as such to the life beneficiary. In the course of its opinion the Supreme Court said:

Taxation is a practical matter and those practical considerations which support the treatment of the disposition of one's income by way of gift as a realization of the income to the donor are the same whether the income be from a trust *or from shares of stock* or bonds which he owns. [Italics supplied.]

Under the first issue we held petitioner taxable on the dividends from the 1,000 shares of Climax Molybdenum Co. stock on the ground that

although she had transferred such shares to the John Arthur Hyman trust she retained sufficient powers to leave her the virtual owner of the shares. Under the present issue petitioner at all times here materially remained the owner of the tree which produced the fruit.

We hold that the $13,000 in question is taxable to petitioner. *Helvering* v. *Horst, supra; Helvering* v. *Eubank*, 311 U. S. 122; *Harrison* v. *Schaffner, supra.* Cf. *Commissioner* v. *Lamont*, 127 Fed. (2d) 875; *Rhodes Estate* v. *Commissioner*, 131 Fed. (2d) 50; *B. O. Mahaffey*, 1 T. C. 176.

Regarding the gift tax deficiency, petitioner assigns that the respondent erred in determining that the value on December 6, 1939, of "the right to receive dividends that might be declared between that date and December 31, 1939 on 10,000 shares of the common capital stock of Climax Molybdenum Company was $13,000." Petitioner contends that as a practical matter we should find as a fact that the value of this "right" on December 6, 1939, did not exceed 15 or 20 cents per share. She bases this contention upon the past performance of the Climax Molybdenum Co. in that in 1936 the company paid out in dividends 48.43 percent of its earnings; in 1937, 59.65 percent; in 1938, 70.51 percent; and, up to December 6, 1939, the company had already paid out in dividends approximately 49.87 percent of its 1939 earnings. She contends that based upon this past performance one could not reasonably anticipate that between December 6, 1939, and the close of the year the company would do any more than declare and pay the fourth quarterly dividend of 30 cents per share, whereas on December 8 it actually declared a special dividend of $1 per share in addition to the fourth quarterly dividend, making both payable on December 22, 1939.

The respondent contends that his determination is presumptively correct and that "Petitioner has introduced no evidence whatsoever to show that the value of the right on December 6, 1939, was less than $13,000." In her reply brief petitioner says she has introduced sufficient evidence to show that the respondent's determination was arbitrary, and cites *Helvering* v. *Taylor*, 293 U. S. 507.

The parties appear to be in agreement that on December 6, 1939, petitioner made a completed gift to her husband of the "right to receive all dividends which may be declared and paid" between December 6 and December 31, 1939, on 10,000 shares of the capital stock of the Climax Molybdenum Co. We think petitioner did make such a gift, cf. 24 American Jurisprudence, Gifts, sec. 35; *Crawfordsville Trust Co.* v. *Elston Bank & Trust Co.*, 25 N. E. (2d) 626, 637; *Pace* v. *Pace*, 73 N. C. 119; and that the gift tax applies. Section 501 (b) of the Revenue Act of 1932 provides that "The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible," and

the Supreme Court has said that this language "is broad enough to include property, however conceptual or contingent." *Smith* v. *Shaughnessy*, 318 U. S. 176. Cf. Federal Estate and Gift Taxation by Randolph E. Paul, vol. 2, sec. 16.12.

Section 506 of the Revenue Act of 1932 provides that "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." The respondent has determined that the value of the gift at the date of the gift was $13,000. We do not agree with the petitioner that this determination was arbitrary or that *Helvering* v. *Taylor, supra*, is applicable. We think the best evidence of the value of the gift is the amount of dividends that were actually declared and paid during the effective period recited in the assignment. This was the value determined by the respondent. The gift tax deficiency determined by the respondent is sustained.

*Decisions will be entered for the respondent.*