Nelson L'ittell v. Commissioner.
Nelson L'ittell v. Commissioner
Docket No. 3635.
United States Tax Court
1945 Tax Ct. Memo LEXIS 245; 4 T.C.M. (CCH) 363; April 7, 1945
*245 Grantor created trusts for benefit of his children expressly reserving the right to modify or alter, from time to time, the trust agreements, including the power to change the beneficiaries of the principal and income and to increase or decrease their beneficial interests, though he could not revest himself with title to the corpora or direct that any of the income therefrom be paid over to him or his estate. Held, the grantor is the "owner" of the trust property for purposes of section 22(a) of the Internal Revenue Code. Basil N. Bass, Esq., 22 E. 40th St., New York, N. Y., for the petitioner. Carl A. Stutsman, Jr., Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The taxes in controversy are individual income taxes for the calendar years and in the amounts as follows: Year
Deficiencies
1939
$ 240.07
1940
1,051.06
1941
3,034.27
In determining the deficiencies the Commissioner added the total income of certain trusts created by petitioner for the benefit of his sons to the petitioner's income for the taxable years. The determination was based on the application of section 22(a) of the Internal Revenue Code and the principle of Helvering v. Clifford, 309 U.S. 331, and upon the provisions of section 107 as amended by section 134 of the Revenue Act *247 of 1943. The Commissioner further determined that the income from a certain royalty contract and certain annual interest payments upon a so-called "capital investment" owned by petitioner and assigned by him to the trusts was taxable to petitioner as assignor thereof. A partial stipulation of facts filed by the parties is found as stipulated and is incorporated in our findings. Findings of Fact Petitioner, Nelson Littell, resides at New Canaan, Connecticut. At all times herein he has been engaged in the practice of law in New York City, specializing in patent law. His individual income tax returns for the taxable years were filed with the collector of internal revenue for the district of Connecticut. Fiduciary returns on Form 1041 for each trust and individual returns on Form 1040 for each beneficiary were filed with the same collector. None of the trust income was reported as income to petitioner during the years in question. During 1932 in return for legal services rendered and as compensation for negotiating favorable licensing agreement contracts between the American Hyalsol Corporation or the Hydronapthene Corporation, as licensors, and the E. I. DuPont DeNemours & Company *248 or the Proctor & Gamble Co., as licensees, the petitioner acquired two separate royalty interests. One interest amounted to two per cent and the other to five per cent of the royalties paid by the licensees for the use of the patents. Petitioner negotiated for the benefit of the American Hyalsol Corporation and the Hydronapthene Corporation, and his share of the royalties, pursuant to contracts between himself and the respective client patentee companies, was to be paid by each of the above companies. The royalty interests so acquired were to continue for the duration of the licensing contracts which petitioner was instrumental in securing. From 1924 until April 19, 1929, petitioner was associated in the practice of law with the firm of Hammond & Littell. Hammond was a five-eighths partner and petitioner a three-eighths partner in the firm. Hammond died on April 19, 1929. Pursuant to an oral agreement between the former partners, petitioner paid one-third of the net income earned by the firm, which continued to be known as Hammond & Littell, to Hammond's widow for a two-year period ending April 19, 1931. In addition, petitioner paid the estate of his deceased partner the sum of $17,025.57 *249 as partnership settlement for Hammond's interest in the physical assets and good will of the firm of Hammond & Littell. On or about January 2, 1937, petitioner entered into a partnership contract with one Charles P. Pollard for the practice of law. Among other things the contract recited that petitioner was the owner of the library, furniture and fixtures and good will of the firm of Hammond & Littell, and paragraph three provided as follows: "The party of the first part [petitioner] will permit the use of the firm name of Hammond & Littell, and the goodwill, library, furniture, fixtures, files, etc., together with such additions and improvements therein as may be made from time to time. The value of this goodwill, library, furniture, fixtures, etc., and other assets now located at 22 East 40th St., New York, New York, has been appraised and is of the reasonable value of Fifty Thousand ($50,000.) Dollars, and the parties hereto agree that the partnership shall pay to the party of the first part [petitioner] or his assigns interest at the rate of six (6%) percent per annum on said sum, which interest shall be paid in semi-annual installments on July 1st and January 1st of each *250 year, or more frequently if the parties desire." As of January 2, 1937, petitioner executed three trust agreements, one for the sole benefit of each of his three sons whose names are, and whose ages were on the nearest birthday, as follows: Nelson Littell, Jr., 17 years, Henry C. Littell, 15 years, and Arthur S. Littell, 12 years. The provisions of each of the trust agreements were identical except for the name of the beneficiary. The instruments were executed by petitioner as "grantor" and by petitioner, Sarah A. Littell, his mother, and the First National Bank & Trust Co. of Canaan, as trustees. Paragraph nine, however, provided that notwithstanding any provision to the contrary, title to the property of the trust should be held by the grantor as trustee who should be succeeded at his death or disability by Sarah A. Littell as trustee, who should be succeeded by the First National Bank & Trust Co. as trustee. If Sarah A. Littell predeceased the grantor the bank was to succeed him as trustee. Throughout the taxable years petitioner acted as the sole trustee. The instrument recited that the grantor was desirous of setting up a trust fund in an amount sufficient to enable his *251 designated son to pay his expenses in college, and after he had completed his formal education, to use such income to support himself while obtaining a footing in the calling or profession of his choice, and, that the grantor desired his son to acquire experience in assuming responsibility and in handling and using money by receiving and managing the income from the property transferred in trust. The instrument recited that it was the grantor's intention to support his son from other funds while the son was a minor and that the trust income should be used only for the purposes above enumerated. To effectuate the trust the grantor assigned to the trustee for three trusts in equal proportions "all of my right, title and interest in and to certain contracts between myself and the American Hyalsol Corporation and between myself and The Hydronapthene Corporation, pursuant to which I am entitled to receive a share of the royalties * * *, together with all of my right, title and interest to the income from my capital investment in the partnership of Hammond & Littell * * *." This assignment was referred to in the trust agreement as Exhibit "A". The petitioner reserved the privilege *252 of increasing the principal of the trust from time to time. On or about November 15, 1937, petitioner transferred to each of the trusts certain specified stocks. The stocks were transferred to two brokerage accounts on January 11, 1938. The accounts were entitled Nelson Littell, trustee for Nelson Littell, Jr., Henry C. Littell, and Arthur S. Littell. Prior to the opening of the accounts the brokerage houses were furnished copies of the trust documents. No other property was transferred by petitioner to any of the trusts. The gross income of each trust consisted substantially of the royalty payments and the payments of interest on the "capital investment." The record does not disclose whether any of the trust income was derived from the stocks during the taxable year. Paragraph one provides that "the trustees shall hold the property at any time comprised in the trust, manage, invest, and reinvest the same, collect and receive the issues, rents, income and profits thereof, and dispose of the principal and income as follows;" (Following is a summary.) To pay over the net income of the trust to the designated beneficiary until he reaches the age of 50. One-fourth (1/4) of the principal *253 to be paid over to the beneficiary when he reaches the age of 35; one-third (1/3) of the balance when he reaches 40; one-half of the balance at 45; and the remaining principal was to be paid over when the beneficiary reached 50. In the event of the death of the beneficiary before the entire estate had been distributed to him it was to be distributed equally in the same manner to his issue. If he left no issue it was to be paid over in equal shares and in the same manner to his surviving brothers and sister or issue surviving them. If no brother or sister or their issue survived him, the fund was to be paid over to the distributees of petitioner who would take from him under the laws of Connecticut had he died intestate. The principal of the trust could be invested and reinvested, in the absolute and uncontrolled discretion of the trustees, so as to secure the largest possible returns consistent with reasonable security of principal. Neither of the individual trustees was entitled to any compensation for services in executing the trust, but the bank, upon taking over the execution of the trust was entitled to receive five per cent of all income collected. The trustees were authorized *254 to buy and sell securities outright or on margin. If marginal accounts were maintained they were authorized to borrow money and to pledge the principal of the trust as security for either time or call loans. They were empowered to vote all stock, consent to the reorganization, consolidation, or to the sale of any corporation, or to the sale of corporate property by any corporation, the stock or other securities of which were held by the trust. They could exercise any options, convert stock, subscribe for additional stock or sell any stock rights, and could apply the proceeds as between principal and income as they saw fit. Distributions to the beneficiaries, who had a right to receive principal, could be made out of any property held by the trust and at the value set thereon by the trustee whose determination was binding and conclusive upon all the parties in interest. Other pertinent provisions are as follows: "Neither the Grantor nor the Trustees, nor either of them, shall have any power to revest in the Grantor title to any part of the principal of the trust hereby created, but nothing herein contained shall be construed as preventing a majority in interest of persons who are *255 over twenty-one (21) years of age nad have a substantial and presently vested adverse interest in the disposition of the whole or any part of the principal, or in any of the income therefrom, from revesting title in the Grantor by executing and delivering to the Trustees an instrument in writing terminating the said trust, such instrument to be executed in the manner provided for a deed of real property to be recorded under the laws of the State of Connecticut. * * * * *
"Notwithstanding anything to the contrary herein contained, the Grantor may from time to time during his lifetime by instrument in writing, executed, acknowledged and delivered to the Trustees, modify or alter this agreement and the trusts then existing, including (without limiting the generality of the foregoing) the power to change the beneficiaries of the income and principal thereof, and to increase or decrease their beneficial interest hereunder; provided, however, that the Grantor shall have no power to modify or alter this agreement or the trusts at any time existing hereunder so as to increase directly or indirectly the interest of the Grantor or his estate in the income from the trust funds nor to revest *256 in the Grantor or his estate title to any part of the principal of the trust funds or undistributed income thereon." On November 18, 1937, a single checking account was opened in the First National Bank & Trust Co., in the name of Nelson Littell, trustee for Nelson Littell, Jr., Henry C. Littell, and Arthur S. Littell. Thereafter all trust income, with the exception of a few payments of income which were made directly into one of the trustee brokerage accounts, was paid into the trustee bank account. All of the trust income was distributed during the taxable years to the beneficiaries and was paid over to them in one of the following ways: Deposited in their checking or savings bank accounts; or paid to universities or departments thereof; or purchase of stock which was issued in the names of the respective beneficiaries. Nelson Littell, Jr. was matriculated at Penn State College from September 1937 until his graduation in 1941. His tuition and other college expenses were paid from his trust fund. Henry C. Littell entered Purdue University in September 1939 and thereafter until January 1, 1943, his tuition and other college expenses were paid from his trust fund. Arthur S. *257 Littell entered Harvard University in September 1941 and thereafter until July 1, 1943, his tuition and other college expenses were paid from his trust fund. All of the income received by the trusts during the taxable year, except the dividend income that may have been received on the stocks transferred in trust, resulted from earnings from personal services rendered by petitioner either in his capacity as a patent attorney, or from personal services as a negotiator of the patent license contracts. No change was made in any of the trusts until June 10, 1943, when petitioner resigned as trustee and relinquished his power to alter or modify the trusts and to change the interests of the beneficiaries. Opinion ARUNDELL, Judge: The petitioner argues that he is not taxable on the income from the trust because he has divested himself of its ownership and has deprived himself of the right to have any part of the income or the principal paid to him or to his estate. On the other hand, the respondent contends that the petitioner is the "owner" for purposes of Federal income taxation under section 22(a) of the Internal Revenue Code. No one fact is normally decisive *258 of the question, but, as stated by the Supreme Court in the Clifford case, "the answer * * * must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation. And where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as section 22(a) is concerned." The short term factor of the Clifford case is not here present, but the present beneficiaries are members of petitioner's family group and a very pertinent factor is that petitioner has reserved to himself the power, from time to time, to modify or alter the trusts, including the power to change the beneficiaries of the income and principal and to increase or decrease their beneficial interests, although he could not revest himself with title to the corpus of the trusts, nor could he direct that any of the income therefrom be paid over to him. While there is some question as to whether it can be said that the trust income during the taxable years has *259 been used to relieve the taxpayer of an obligation to support and educate, there is no question but that it has been used as a substitute for customary current bounties. Much has been written in the cases decided by this and other courts concerning the effect of the exercise of broad management powers by a grantor-trustee. Certainly the trustee in the instant case was given broad and somewhat unusual authorities. However, upon this factor, we need not dwell for we find that that which the grantor has expressly reserved, coupled with the other aspects of the creation and operation of the trusts, warrant a conclusion that the petitioner is the substantial "owner" of the trust property for Federal income tax purposes. Here, as in Commissioner v. Buck, 120 Fed. (2d) 775, the significant factors are that the donees are members of petitioner's immediate family group, that the petitioner appears to have income in excess of his normal needs and, that during his lifetime, he is free, from time to time, to modify or alter the trust agreement and the trusts then existing, including (without limiting the generality of the foregoing) the power to change the beneficiaries of the *260 income and principal and to increase or decrease their beneficial interests. Petitioner could not again acquire title to the corpus, nor could he direct that any part of the income be paid to him. Under the above general power to modify or alter the terms of the trust, petitioner was in possession of even greater control than was expressly retained by the grantor in the Buck case, supra. Though management powers were in the trustee petitioner, by virtue of that which he retained, had authority as grantor to take over at any time complete control of the trust property. He could reduce or obliterate the respective interests of the beneficiaries and could at any time allot those interests to other objects of his bounty. In the circumstances, we must conclude that the petitioner is taxable as the "owner" of the trust property. Commissioner v. Buck, supra; Florence Hyman, 1 T.C. 911; Lura H. Morgan, 2 T.C. 510; Morton Stein, 41 B.T.A. 994. Further, it appears that the income from the royalty contracts would be taxable to petitioner as assignor thereof. Petitioner rendered legal services and other valuable assistance to certain corporations. *261 As compensation for the services rendered, each of the client corporations agreed to pay petitioner a percentage of certain royalty payments they were to receive for the use of certain patents owned by them. Petitioner assigned his right and title in and to these contracts to the trustee. It seems to us that this transaction comes within the rationale of Helvering v. Horst, 311 U.S. 112, as applied in Helvering v. Eubank, 311 U.S. 122. Certainly, the interest from petitioner's socalled "investment" in his law firm is taxable to him as assignor for he purported to assign to the trust only the income or "interest" and not his "investment". Helvering v. Horst, supra.
In view of our determination, it is unnecessary that we consider the application of of section 167 as amended by section 134 of the Revenue Act of 1943. Decision will be entered for the respondent.