## JOHNSON v. UNITED STATES.
### No. 10214.

Circuit Court of Appeals, Ninth Circuit.

April 21, 1943.

As Amended April 23, 1943.

---

Todd W. Johnson and Frank T. Horner, both of Los Angeles, Cal., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Helen R. Carloss, and Willard H. Pedrick, Sp. Assts. to the Atty. Gen., Leo V. Silverstein, U. S. Atty., and E. H. Mitchell, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment of the district court denying appellant a refund of a portion of his income tax paid by him for the tax year 1935. It is not questioned that a proper claim for refund was filed and the case was before. the district court on the merits of the claim.

The appeal challenges the district court's decision that under the provisions of the Revenue Act of 1934 for the taxing of income derived from "compensation for personal service," [1] Congress intended to tax to the husband in California, one of the eleven community property states, the earnings of the community then due, if the wife transfer to the .husband her half interest in them.

Appellant, a lawyer, and his wife, at all pertinent times were members of a California matrimonial community. The appeal involves the factor in taxpayer's income of the wife's one-half interest in the community's claim against certain clients to whom services had been rendered by the husband, under the California law the manager of the community property. In an exchange of all the community assets between the spouses, the wife had transferred her half of the earned fees to appellant, who, later, in 1935, collected them. The Commissioner determined and the district court held that the wife's transferred community half interest in the earnings is taxable as *his* earnings under the income from "personal service" provision of Section 22 (a) of the Revenue Act of 1934.

Appellant contends (A) that he is not liable under this personal earning provision, and (B) that he is entitled to a refund on a computation of his tax by including in his gross income a smaller gain in the exchange with his wife of the community property under the "dealings in property" provision, also a part of Section 22(a). That section provides,

"§ 22. Gross Income

"(a) *General Definition.* 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

The services had been rendered by the community's agent prior to March 4, 1935, and the community then had a matured chose in action against the clients. On that date the husband and wife entered into an agreement accomplishing the following two purposes.

One of the purposes was the transfer of the community interest of the wife to the husband in certain parcels of the community property, in return for the transfer from the husband to the wife of his community interest in the remaining parcels. By these exchanges there remained no community property and all the parcels were owned by one or the other spouse in severalty.

The power of one spouse to transfer to the other, giving to the transferee spouse as his or her separate property the half community interest of the other, is conceded by appellee's brief. It is created by the California Civil Code which provides that the spouses may deal *inter se* "as to property" as "if unmarried." [2]

---

[1] Under section 22 (a) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 669, enacted three years after the decisions of United States v. Malcolm, 282 U.S. 792, 57 S.Ct. 184, 75 L.Ed. 714, and Poe v. Seaborn, 282 U.S. 101, 111, 51 S.Ct. 58, 75 L.Ed. 239, relative to the character of community property in California, Washington and elsewhere.

[2] The Civil Code sections are

"§ 158. **Husband and wife may make contracts.** Either husband or wife may enter into any engagement or transaction with the other, or with any other person,

Under the property transfer portion of the agreement of March 4, 1935, appellant's wife transferred to him her half interest in the community claim, in the amount of $52,028.25, then payable for the legal services theretofore rendered. The husband not only transferred to her his interest in certain parcels of real and personal property, but also agreed to pay, *after the transfers were accomplished*, the wife's income tax liability for the years 1934 and 1935, the latter covenant obviously not to be performed until after the following December 31, 1935.

The second purpose of the agreement of March 4, 1935, was to provide for the wife's alimony in a divorce proceeding she contemplated. For this there was a separate covenant in the agreement for the payment of $6,000.00 by the husband to the wife, which the district court properly held "was in full satisfaction of and constituted a complete discharge of the rights, if any, which his wife had to receive support, maintenance or alimony from plaintiff."

Appellee contends that, despite this covenant for alimony, the separate covenants respecting the transfers of property between the parties constituted a mere discharge of the husband's obligation, *qua* husband, to his wife, to contribute to her support, arising from the contemplated divorce proceeding. Appellee offers no authority for such a contention, much less any California case considering sections 158 and 159 of the Civil Code.

We hold the contention has no merit. On March 4, 1935, before the divorce proceedings were begun, the wife had transferred to the husband as his separate property her half interest in the community chose in action for the attorneys' fees then due. The transfer in no way concerned her right to alimony.

The divorce proceeding was begun on March 5, 1935; an interlocutory decree was granted on April 1, 1935; the divorce was not consummated until April 2, 1936, when the final decree was entered.

Appellant collected the $52,028.25 between March 4th and December 31, 1935. Appellant's wife's income tax return for 1935 included in her gross income the one-half of the amount of earned fees which she had transferred to the separate ownership of appellant. She paid her taxes on her income including that amount. The appellant's return for that year included in his gross income one-half the amount of the fees and paid his tax on his income including that amount.

The Commissioner found the wife entitled to a refund because of her inclusion in gross income of her community half interest, and assessed a deficiency against appellant in the sum of $7,821.89. This latter amount was determined by the inclusion of the wife's half community interest in the earned fees which she had transferred to appellant's separate ownership. Appellant paid the assessed deficiency, filed his claim for refund, and began this suit for its recovery.

The district court held against both of appellant's propositions. It decided that the "accounts receivable of $52,028.25, representing legal fees earned, but not collected prior to March 4, 1935, received by the plaintiff in said property settlement, became and were his separate property by virtue of the said property settlement agreement. The accounts receivable of $52,028.25 were the separate property of plaintiff when collected and his income tax was levied on a cash basis and all of said collections thereof in the sum of $52,028.-25 were taxable to plaintiff. * * * The collections from the accounts receivable in the total sum of $52,028.25 representing legal fees earned prior to March 4, 1935, and collected by plaintiff in 1935 and after March 4th, were taxable to him alone and were not divisible between him and his wife for Federal income tax purposes. No part thereof was taxable to his wife."

This decision followed the district court's opinion properly stating that under Civil Code, sections 158 and 159 "the spouses are enabled, by contract, to convert community property into separate property, and vice versa." [45 F.Supp. 377, 379.]

*A.* We cannot agree with the district court's decision as to the intent of Congress with reference to the effect in the eleven community property states of the provision of Section 22 (a) for "compensation for personal service." Under that decision ev-

respecting property, which either might if unmarried; * * *

"§ 159. (Contract altering legal relations: Separation agreement.) A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, * * *." Smith v. Smith, 47 Cal.App. 650, 191 P. 60; Wren v. Wren, 100 Cal. 276, 34 P. 775, 38 Am. St.Rep. 287.

ery pair of spouses, of which one has separate income, on or before December 31st of any year, may transfer from the community to the spouse without separate income, all or part of the earned but unpaid community income from any source and also transfer the incidence of the tax to the transferee spouse.

A man having a rich wife with large separate income will have his wife's share of the earned and uncollected community income transferred to him, thereby taking that amount out of the wife's high tax brackets. Vice versa, with the rich husband with high separate income, who may transfer the community's earned but uncollected income to his wife without separate income. The husband, as manager of the community's affairs, may easily postpone the collection of major items of earned income until the tax evasion, so legalized, may be computed and accomplished.

Such transfers of earned but uncollected income, as here prior to divorce, are now rare occurrences. Under the principle sought to be established by appellee they would be an incident of every advantageous tax computation of vast numbers of married couples in community states. To hold that the one spouse's tax liability in earned but uncollected community income so may be transferred to the other, merely because the transfer makes the income the separate property of the other spouse, would be in defiance of the principle established by the Supreme Court to prevent just such tax evasions in Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81, and Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655.

■ In Helvering v. Horst, the taxpayer transferred to another, coupons for interest on bonds from which they were detached. The transferee collected the interest. The Commissioner determined the taxpayer to be taxable on the amount of the interest, despite the fact he had not and could not collect it, and the Commissioner was sustained by the Board of Tax Appeals. The circuit court of appeals reversed the Board. In reversing that court and holding the donor taxpayer liable for the interest collected by the donee, the Supreme Court, 311 U.S. at page 118, 61 S. Ct. at page 147, 85 L.Ed. 75, 131 A.L.R. 655, states the controlling principle to be,

"The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment and hence the realization of the income by him who exercises it. * * *"

The same principle is applied in Helvering v. Eubank, where the taxpayer, a life insurance agent, assigned his earned premiums to companies which had employed him. It was held that the taxpayer had not shifted the incidence of the tax from himself.

In Harrison v. Schaffner, the life beneficiary of a testamentary trust assigned to certain of her children specified amounts in dollars from the income of the trust for the year following the assignments. In that case the assignment was neither of earnings nor of income due the assignor when the assignment was made.[3] Nevertheless, the Supreme Court held the assignor liable for the tax upon the amount collected by the assignee. It summarizes the decisions in Helvering v. Horst and Helvering v. Eubank, and applies the principle there established as much to an assignment "*to pay* a debt" as "to make a gift." It states the principle, as follows (312 U.S. at page 580, 61 S.Ct. at page 760, 85 L.Ed. 1055):

"Decision in these cases was rested on the principle that *the power to dispose of income is the equivalent of ownership of it* and that the exercise of the power to procure its payment to another, whether *to pay a debt* or *to make a gift,* is within the reach of the statute taxing income 'derived from any source whatever.'" (Emphasis supplied.)

Under United States v. Malcolm, 282 U. S. 792, 51 S.Ct. 184, 75 L.Ed. 714, each California spouse has a half ownership of the earned income in the fees and each is taxable therefor. Under sections 158 and

[3] This case seems distinguishable from our decisions that a California spouse may transfer future earnings so as to make them all taxable in entirety to the transferee. The transferring spouse did not own them when transferred, since they did not then belong to the community. Van Every v. Commissioner, 9 Cir., 108 F.2d 650; Boland v. Commissioner, 9 Cir., 118 F.2d 622; Van Dyke v. Commissioner, 9 Cir., 120 F.2d 945; Somerville v. Commissioner, 9 Cir., 123 F.2d 975.

159 of the Civil Code, each has the "power to dispose of income" to the other. Under the Horst and succeeding decisions neither has the power to transfer to the other the incidence of the tax by exercise of the power to dispose of the income of each by its transfer to the other.

The appellee's brief makes a feeble attempt to argue that the wife had no interest in the community's claim for the earned fees, and hence transferred nothing to appellant. It is described as a "technical" interest. Poe v. Seaborn, 282 U.S. 101, 111, 51 S.Ct. 58, 75 L.Ed. 239, disposed of that contention for the community property states such as California since 1927.[4] In its summary the opinion of the court states, 282 U.S. at page 111, 51 S.Ct. at page 59, 75 L.Ed. 239, "Without further extending this opinion it must suffice to say that it is clear the wife has, in Washington, a vested property right in the community property, equal with that of her husband; and in the income of the community, including salaries or wages of either husband or wife, or both. * * *"

Appellee, similarly, makes the extraordinary argument that the husband who acquires in severalty his wife's community interest in community earnings acquires nothing "substantial" which he did not have as the manager of the community before it is transferred to him. The argument seems based on the theory that the wife has no legal right to prevent him wasting the community assets in personal dissipation or in extravagant gifts to her, say, of furs and jewelry. Assuming that he has such uncontrolled power, it ends when he attempts to use any of the community assets, and this includes such personal property as cash, for any one other than one of the two members of the community, such as in gifts to a friend or to his mistress.

In such cases the wife may compel the return to the community of all the conveyed property, if she begin her suit prior to the dissolution of the marriage, even if the husband die after the suit is begun. Britton v. Hammell, 4 Cal.2d 690, 52 P. 2d 221. If the community be dissolved by death before she begins her suit, she may recover at least her half of the property so wrongfully disposed of by the community's agent. Ballinger v. Ballinger, 9 Cal.2d 330, 70 P.2d 629. Before assignment of the community earnings he may not use them on property which he separately owns. Dunn v. Mullan, 211 Cal. 583, 296 P. 604. There is no merit in appellee's contention that appellant had the same interest in the fees after the wife had transferred her community half thereof as he had before. Until such transfer the husband has had no such "power to dispose of" such earnings as he would have had if their "ownership" had been in him. Cf. quotation from Harrison v. Schaffner, supra.

The district court upheld the decision of the Commissioner that by the property settlement the wife's community in the claims in uncollected fees owned by the community, not only became the separate property of the husband but also the wife's one-half community interest was translated from community earnings into his separate earnings. This is in clear conflict with the holding in Poe v. Seaborn, supra.

In the Poe case the contrast is drawn between the character of the earnings in his profession as a husband in his matrimonial relationship, as distinguished from his separate person activities in a non-community and a community property state, in a discussion of its decision in Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. That case considered the nature of a California husband's earnings in 1920 before the state adopted, in 1927, a community property system similar to Washington's. The court states,

"In the Earl case a husband and wife contracted that any property they had or might thereafter acquire in any way, either by earnings (including salaries, fees, etc.), or any rights by contract or otherwise, 'shall be treated and considered, and hereby is declared to be received, held, taken, and owned by us as joint tenants. * * *' We held that assuming the validity of the contract under local law, it still remained true that the husband's professional fees, earned in years subsequent to the date of the contract, were his individual income, 'derived from salaries, wages, or compensation for personal service,' under sections 210, 211, 212 (a) and 213 of the Revenue Act of 1918 * * *. The very assignment in that case was bottomed on the fact that the earnings would be the husband's property, else there would have been nothing on which it could operate. That case presents quite a different question from

4 United States v. Malcolm, 282 U.S. 792, 795, 51 S.Ct. 184, 75 L.Ed. 714; re- lying on Poe v. Seaborn, 282 U.S. 101, 111, 51 S.Ct. 58, 75 L.Ed. 239.

this, because here, by law, *the earnings are never the property of the husband, but that of the community."* (Emphasis supplied.) Poe v. Seaborn, supra, 282 U.S. at page 117, 51 S.Ct. at page 61, 75 L.Ed. 239.

Obviously the wife's half of the community earnings which "are never the property of the husband, but that of the community," did not become income taxable to the husband as his individual earnings because, here by a contract, they were transferred from the community to him, however the transfer was accomplished. For purposes of income taxation this is true whether we regard the community as a separate entity or the husband in his capacity as a husband in the matrimonium, earning the fees as representing both his wife and himself in their community relationship. It was error to tax to appellant his wife's transferred half of the fees as *his* earnings.

*B.* Though the collection of the wife's half of the earnings by the husband does not create a tax event for him under the provision of Section 22 (a) of the Revenue Act of 1934, requiring personal earnings to be taxed, the question remains whether the dealing in community properties, by which he acquired the half of the community's chose in action against the clients, created a taxable gain.

Here there is a property settlement, where not only is there an exchange of the community assets of both business and non-business property, including the chose in action for the half of the fees, but the husband covenants to pay thereafter the wife's debts,—taxes assessed and to be assessed against her individually. The exchange has yielded $52,228.25 in cash in the tax year.

Is the Commissioner precluded from finding a taxable event in these California community transfers of the assets and determining whether there is a gain to either party as a "dealing in property," another of the provisions of Section 22 (a) of the Revenue Act of 1934?

The court held what was done was not such a taxable event.[5] We do not agree. Here was something more than a mere division of property. The appellant admits that in the transaction so dealing in prop-

erty he made a gain of over two thousand dollars. We regard it as a taxable gain to be computed under sections 111 and 112 (a) and 112 (c) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, pages 691, 692, 694. Cf. Commissioner v. Mesta, 3 Cir., 123 F.2d 986.

We think the district court erred in not determining the appellant's right to a refund by a computation of the amount of his admitted gain from the transfers of the property with his agreement to pay a further consideration thereafter.

Reversed and remanded for a determination of the claim of refund in accord with this opinion.

Reversed and remanded.

MATHEWS, Circuit Judge, concurs in the result.

---

[5] The holding is, "Said property settlement was a division or partition of common property on which no gain or loss was recognized to the spouses at the time of said division or partition under the Federal revenue statutes relating to income tax."