IONE C. HUBNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58156. Filed September 11, 1957.

*Roger W. Young, Esq.,* for the petitioner.
*Eugene F. Reardon, Esq.,* for the respondent.

#### OPINION.

MULRONEY, *Judge:* The respondent determined a deficiency in petitioner's income tax for the year 1951 in the amount of $14,511.87. Some of the adjustments made by respondent were not contested. The case presented here involves the effect of a property settlement agreement between members of a marital community where one member was also a partner in a partnership and the property settlement agreement limited and specified the members' property interest in the partnership. All of the facts have been stipulated and the stipulation is adopted as the findings of fact.

Petitioner is an individual residing in El Cajon, California, and she filed her individual income tax return for the calendar year 1951 (on the cash basis) with the then collector of internal revenue for the sixth district of California at Los Angeles, California. Petitioner and E. J. Hubner were married on November 3, 1939, and they separated on or about December 2, 1950, and thereafter lived apart until the decease of E. J. Hubner.

On September 23, 1950, there was formed in San Diego, California, the partnership of the Hubner Building Company. E. J. Hubner and the petitioner were the original partners. By two transfers later in the month of September 1950, petitioner transferred her interest in the partnership to W. L. Clarke and A. B. Jackson so that after September 26, 1950, the partners of Hubner Building Company were E. J. Hubner, W. L. Clarke, and A. B. Jackson, who each owned a one-third interest in the profits of the partnership and each was liable for one-third of the losses thereof, all as shown by the agreement of partnership and amendments thereto. The partnership adopted a fiscal year ending February 28 of each year, the first of said fiscal years ending February 28, 1951.

On or about April 30, 1951, petitioner and E. J. Hubner entered into a property settlement agreement under and pursuant to the laws of the State of California and later, on May 11, 1951, an interlocutory decree of divorce of the petitioner from E. J. Hubner was granted by the Superior Court of the State of California in and for the County of San Diego. The interlocutory decree of divorce approved the property settlement agreement previously entered into between the parties and it incorporated the property settlement agreement in the decree and ordered and directed the parties to carry out the terms of the agreement.

The property settlement agreement provided, in part, as follows:

C. Wife hereby agrees to, and by this agreement she does hereby, sell, transfer, assign and convey unto husband, as his sole and separate property, and does hereby forever waive any and all rights in or to, all of her community interest in the net worth and in the profits and losses past, present and future, of the partnership described in ARTICLE THIRD [Hubner Building Company] of this agreement, with the following exceptions and reservations:

(1) There is reserved to the wife, one-half (½) of the capital interest of husband in said partnership at the close of business on February 28, 1951, in the amount of $117,592.82, which the parties agree has been determined in accordance with the regular method of accounting used by the partnership in keeping its books and records, and after crediting said capital interest with husband's distributable share of the net profits of the partnership for all prior periods;

After the parties entered into this contract the respondent audited the books and records of the partnership and determined that the capital interest of E. J. Hubner in the partnership as of February 28, 1951, amounted to the sum of $162,859.79, or $45,266.97 more than the $117,592.82 stated in the property settlement contract. Of this sum of $45,266.97, the Commissioner charged E. J. Hubner with an additional $34,226.36 of ordinary income and the balance, or $11,040.61, of capital gain. The correctness of respondent's adjustments and determinations with respect to the partnership interest of E. J. Hub-

ner is not in dispute. The adjustments were in the main removing from partnership income for fiscal year 1952 certain sums which were reallocated to fiscal year 1951.

Respondent determined that petitioner was liable in her calendar tax year 1951 for one-half of the aforesaid increase in the distributable income of her husband from the partnership, both ordinary and capital. This resulted in the deficiency in question here.

Petitioner contends her liability for tax with respect to the partnership income is limited by the property settlement agreement; that by said agreement she did "forever waive any and all rights in or to, all of her community interest in the net worth and in the profits and losses past, present and future," except to the extent of one-half of $117,592.82, the agreed amount of her husband's capital interest in said partnership, as of February 28, 1951, and the increase of $45,266.97 determined by the Commissioner was, under the agreement, her husband's separate property.

Section 158 of the California Civil Code specifically permits each spouse to "enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried."

The parties concede the general proposition that a wife's interest derived from her community rights under California community property law, makes income from a partnership distributable to a partner, taxable one-half to the partner and one-half to his wife.

Assuming that, under the California law, each member of the community would have the power to dispose of past, present, or future income to the other, neither has the power to transfer the incidence of tax as to earnings of the community at the time of the transfer. *Johnson* v. *United States*, 135 F. 2d 125.

In *Johnson* v. *United States, supra,* taxpayer and his wife, members of a California matrimonial community, entered into a property settlement agreement on March 4, 1935. The agreement took the form of a transfer of the community interest of the wife to the husband in certain parcels of the community property in return for the transfer from the husband to the wife of his community interest in the remaining parcels. One item, which the wife transferred to taxpayer's separate ownership, consisted of a matured claim for attorney's fees against clients to whom legal services had been rendered by the taxpayer. The taxpayer collected the claim in 1935 after the settlement agreement of March 4, 1935, and it was held the Commissioner erred in including the full amount of the claim collected in the taxpayer's income for 1935; that one-half of the claim collected was taxable to the wife. The opinion states:

To hold that the one spouse's tax liability in earned but uncollected community income so may be transferred to the other, merely because the transfer makes the income the separate property of the other spouse, would be in defiance of the principle established by the Supreme Court to prevent just such tax evasions in Harrison v. Schaffner, 312 U. S. 579, 61 S. Ct. 759, 85 L. Ed. 1055; Helvering v. Eubank, 311 U. S. 122, 61 S. Ct. 149, 85 L. Ed. 81, and Helvering v. Horst, 311 U. S. 112, 61 S. Ct. 144, 85 L. Ed. 75, 131 A.L.R. 655.

The cases cited in the above quotation stand for the proposition that though income may be transferred, the incidence of tax may not be shifted from the transferor; that the power to dispose of income is the equivalent of ownership of income and the exercise of that power to procure its payment to another is the realization of income by him who exercises it.

Petitioner and her husband had, on February 28, 1951, equal rights to the community income consisting of the husband's distributive share of the true net profits from the partnership. The argument of the petitioner that she waive her rights to said net profits above a certain figure is nothing more than an argument that she disposed of a portion of her income that was earned and uncollected. The very disposition was the act of enjoyment of income within the doctrine of the cited cases. That disposition made him the transferee of income which, under the community property laws of California, belonged to her. However effective the transfer was as property transfer, it does not shift the incidence of the tax. We hold respondent was right in determining petitioner was liable upon one-half of her husband's true distributable share in the income and capital gain of the partnership at the close of the partnership fiscal year on February 28, 1951.

Petitioner also argues that, if she is taxable at all upon the increases determined by respondent with respect to the partnership income, she is taxable thereon on the cash basis of accounting; that she is taxable in 1951 on her share of the partnership income as defined by the property settlement agreement and she is entitled to report any excess on the cash basis in later years when paid. She sums up her position on this phase of her argument in her brief, as follows:

That Section 182 of the Internal Revenue Code of 1939 does not apply to the wife of a partner where the community relationship existing between them is terminated in the same tax year that the fiscal year of the partnership ends, and that in such circumstance the terms of the property settlement agreement respecting the partnership distributable income are controlling for property and tax purposes as well. * * *

Section 182 of the Internal Revenue Code of 1939 provides that, "[i]n computing the net income of each partner, he shall include, whether or not distribution is made to him—" the distributive shares of capital gains and ordinary income.

Section 29.182–1 (*b*) of Regulations 111 provides as follows:

If separate returns are made by the husband and wife domiciled in a community property State, and the husband only is a member of a partnership, the part of his distributive share of gains and losses of the partnership from sales or exchanges of capital assets or the part of his distributive share of ordinary net income or ordinary net loss, which is, or is derived from, community property should be reported by the husband and by the wife in equal proportions. * * *

Petitioner's argument seems to be that the above statute and regulation do not apply to her because the statute states the "partner" must take into income the distributive share, and she was not a partner, nor the wife of a partner, since the community relationship terminated in the same year that the fiscal year of the partnership ended. But she was the wife of a partner and a member of the community when the fiscal year of the partnership ended. On that date, February 28, 1951, one-half of the partnership income, distributable to her husband, belonged to her by virtue of her community property rights and under the statute and regulation she had to report it in her separate return filed for that year, whether paid or not. *Harold K. Hockaday*, 22 T. C. 1327.

*Decision will be entered for the respondent.*