CLIFFORD OWEN DAVIDSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Davidson v. Commissioner
Docket No. 19327-80.
United States Tax Court
T.C. Memo 1982-147; 1982 Tax Ct. Memo LEXIS 604; 43 T.C.M. (CCH) 854; T.C.M. (RIA) 82147; March 23, 1982. Clifford Owen Davidson, pro se. Kenneth W. McWade, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $ 3,836.74 in petitioner's Federal income tax for 1978. The sole issue for decision is whether petitioner recognized a loss arising from an allegedly substantially unequal division of community property upon his divorce. FINDINGS OF FACT Petitioner Clifford Owen Davidson was a single individual residing in Bremerton, Washington, when he filed his petition. He timely filed an individual Federal income tax return for *605 1978 with the Western Service Center, Ogden, Utah. In 1962, petitioner married Colleen M. Davidson (Colleen); this marriage was terminated on June 28, 1978, by a decree of dissolution of marriage (divorce decree) entered by the Superior Court of Washington for Pierce County (Superior Court). Pursuant to the divorce decree, the Superior Court awarded to Colleen, among other items, the family residence, a house located in Gig Harbor, Washington (the house or Gig Harbor property). [1]
Prior to their divorce, petitioner and Colleen, along with their son Kenneth, resided in the Gig Harbor house. Acquired in November 1969 at a purchase price of $ 20,000, the house was a single level structure with a garage, located on approximately 3 acres of land in a predominantly rural area. Between November *606 1969 and June 28, 1978, petitioner and Colleen made capital improvements to the property; cost of improvements to the extent of $ 6,496 and claimed depreciation expenses in the amount of $ 1,400 have been substantiated by documentation. Improvements to the property centered mainly on the garage, part of which petitioner and Colleen converted first into an apartment and later into a ceramics shop. The improvements included structural changes, wiring, remodeling of the garage, and some work on the grounds. Fairly regular repair of the driveway was required because of damage done by a school bus that Colleen drove in the course of her employment and parked at the house for her personal convenience. Additionally, some work was undertaken on the house itself. During the period that the garage was used as an apartment, its only tenants were relatives of the Davidsons. Petitioner maintained no records evidencing any payments of rent, nor did he report any rental income on his tax returns for the years 1969 through 1978. The conversion of the garage into a ceramics shop likewise produced no income to petitioner. The ceramics shop, called Craft and Kiln, was completed in approximately *607 1973, and for the following 1 to 2 years was operated as a ceramics school, with Colleen as instructor. [2]The school produced a loss each year. In about 1975, the school was abandoned, and some other ceramics activities were carried on in a "slipshod" manner until 1976. The property was neither subplatted nor subdivided, and no concrete plans for deriving income from its subdivision were made. In or around March 1977, petitioner was injured while riding as a passenger in a car. At the time of the trial of the present case, he had a personal injury claim against the driver pending in the Kitsap County Superior Court. In connection with the injury, petitioner had received between $ 34,000 and $ 38,000 in settlement of certain insurance claims as of the date of the trial of the instant case. Exactly when he received this money is not shown by the record, but at least one insurance payment totaling between $ 14,000 and $ 18,000 was received after the divorce. Including this payment, the value of the cause of action at the *608 date of the divorce decree was not less than $ 36,000. Petitioner and Colleen separated on July 13, 1977. During that summer, Colleen traveled frequently to Yakima, Washington, to care for her sister who had been in a severe accident. To cover these travel expenses and to provide for general living expenses, Colleen used money which had been kept in a savings account. At the time of the divorce in 1978, the funds in the savings account had been totally depleted. Following their separation and prior to their final divorce nearly one year later, petitioner and Colleen engaged in extensive negotiations, through their attorneys, in order to effect an equitable division of their community property. At petitioner's expense, Colleen obtained on February 25, 1978, an appraisal of the Gig Harbor property, which valued it at $ 39,700. Displeased with this value, petitioner obtained a second appraisal dated April 19, 1978, which concluded that the Gig Harbor property was worth $ 59,000. The appraisal obtained by Colleen with respect to the Gig Harbor property expressly considered the following conditions: extensive infestation of termites, sagging of the roof line, lack of maintenance *609 and incompletion of addition to the older building transported and set up on the site in 1965. Sometime after the appraisal, the buildings were fumigated to exterminate the termites or carpenter ants at a cost of $ 250, and the roof was replaced in the summer of 1979. Petitioner's appraisal makes no mention of termites, sagging roof, or lack of maintenance. In accordance with the settlement negotiated between petitioner and Colleen, the Superior Court in its divorce decree divided the community property pursuant to the following order: [I]t is * * * ORDERED, ADJUDGED AND DECREED that * * * [Colleen] be and she is hereby awarded as her sole and separate property, free of any claim on behalf of * * * [petitioner], the following: 1. The interest of these parties in the family home which is commonly known as Route 4, Box 4681, Gig Harbor, Washington, * * * subject to the contract balance which * * * [Colleen] shall pay and hold * * * [petitioner] harmless from any liability thereon, and subject to a lien in the sum of $ 9,000.00 in favor of * * * [petitioner], payable interest free at the end of five (5) years from the date of the Decree of Dissolution or upon *610 * * * [Colleen's] earlier remarriage or sale of the premises. Said award includes the light share and any insurance insuring said home. 2. Miscellaneous items of household furniture at the family home. 3. 1977 Chevrolet pickup automobile subject to the indebtedness to the Washington School Employees Credit Union which * * * [Colleen] shall pay and hold * * * [petitioner] harmless on account of any liability thereon. 4. Bank and savings accounts at Peninsula State Bank and Washington Employees Credit Union. 5. * * * [Colleen's] interest in her retirement plan with the State of Washington Public Employees Retirement System; and, it is further, ORDERED, ADJUDGED AND DECREED that * * * [petitioner] be and he is hereby awarded as his sole and separate property, free of any claim on behalf of * * * [Colleen] the following property: 1. Miscellaneous items of household furnishings and tools now in his possession.
2. 1973 Opal [sic] automobile subject to the indebtedness at the Metal Trades Credit Union which * * * [petitioner] shall pay and shall hold * * * [Colleen] harmless on account of any liability thereon. 3. Metal Trades Credit Union account. *611 4. Phoenix Mutual life insurance policy No. 1657907, provided he keep and maintain the same and carry the minor son of these parties as the beneficiary thereon until such child attains the age of majority or sooner becomes self-supporting. 5. * * * [Petitioner's] interest in his federal retirement plan at the Puget Sound Naval Shipyards. 6. * * * [Petitioner's] personal apparel and 15 foot plywood bost, trailer and 40 horsepower Evinrude motor. 7. The $ 9,000.00 lien against the family home as set forth above. 8. * * * [Petitioner's] claim for personal injury and property damage arising out of an auto accident; and, it is further, ORDERED ADJUDGED AND DECREED that * * * [petitioner] pay and hold * * * [Colleen] harmless on account of the indebtedness at the Metal Trades Credit Union, Sears, Household Finance Corporation, a current counseling fee, the second half of the 1977 taxes on the family home, the premium on the homeowner's policy through September, 1978 and the second mortgage on the family home which is part of the indebtedness at the Metal Trades Credit Union; and, it is further, ORDERED, ADJUDGED AND DECREED that * * * [Colleen] pay and *612 hold * * * [petitioner] harmless on account of any liability thereon for those debts at the Washington School Employees Credit Union and the contract balance on the family home; and, it is further, ORDERED, ADJUDGED AND DECREED that each party be responsible for any indebtedness incurred by that party since their separation. Clifford was ordered to pay child support for Kenneth, of whom Colleen was granted custody, as well as to maintain Kenneth's health and accident insurance, to pay medical expenses not covered by insurance and "to make provision for the payment of Washington State College, community college or trade school tuition for * * * [Kenneth] for a period of three (3) academic years after his graduation from high school." On his Federal income tax return for 1978, petitioner deducted $ 17,250 as a "divorce loss," which he computed in the following manner: Appraised value of home at 3.3 acres of
land (awarded to my wife)
[1] $ 59,500
Mortgage owed
7,000
$ 52,500
/2 = 26,250
Court awarded lien to me (to be paid
in 5 yrs.)
9,000
Loss
$ 17,250
*613 In the notice of deficiency respondent denied the deduction on the ground that "property settlements due to divorce are not deductible." OPINION In a community property State such as Washington, [3] property acquired by the spouses during their marriage is, generally speaking, community property, and an approximately equal division of the community property between the spouses upon divorce is nontaxable. Siewert v. Commissioner,72 T.C. 326, 332 (1979); Carrieres v. Commissioner,64 T.C. 959, 964 (1975), affd. per curiam 552 F.2d 1350 (9th Cir. 1977). Settlements of community property on divorce, however, "may result in taxable transactions in which a gain or loss is realized" if the division is substantially unequal, as where one spouse receives a share of the community property having an aggregate value substantially greater than one-half the value of all the community property. Edwards v. Commissioner,22 T.C. 65, 69 (1954); Johnson v. United States,135 F.2d 125, 130 (9th Cir. 1943). *614 Respondent argues that petitioner has not shown such an unequal division of property as to engender tax consequences. Moreover, he argues, even if there were an unequal division, petitioner is not entitled to a deduction because the "loss" derives from the sale of a personal residence, and losses from such sales are personal and nondeductible. Secs. 165, [4] 262; sec. 1.165-9(a), Income Tax Regs.; Pulliam v. Commissioner,39 T.C. 883, 885 (1963), affd. 329 F.2d 97 (10th Cir. 1964). We hold for respondent. Petitioner has not carried his burden of proving that the division of property was substantially unequal. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). In evaluating whether petitioner has carried his burden of showing a substantially unequal division of property, we shall use, for the sake of argument, the figures he presents on brief but will designate by asterisks items on which there is no evidence *615 in the record. Petitioner's calculations with the unsubstantiated items so designated are as follows: Colleen
Description
Petitioner's Value
Assets: Gig Harbor property
$ 59,000 Household furnishings
3,000 1977 Chevrolet pickup
4,725 Bank & savings accounts
1,500 Retirement plan
1,600 Craft shop equipment, stock and supplies
[1] 1,100*
Utility share
[1] 100*
Total
$ 71,025 Liabilities: Mortgage on Gig Harbor property
$ 7,000 Lien to petitioner on house
9,000 Lien on Chevrolet pickup
2,000 Total
$ 18,000 Net value of assets awarded to Colleen
$ 53,025 Petitioner
Description
Petitioner's Value
Assets: Tools & misc. household furnishings
$ 250 1973 Opal [sic]
800 Phoenix Mutual Life Insurance policy
1,000 Federal retirement funds
8,000 Boat, trailer, and apparel
250 Total
$ 10,300 Liabilities: Second mortgage on Gig Harbor property
$ 2,400 Lien on Opal [sic]
800 Taxes
285 Insurance on house
[1] 120*
Open charge account
[1] 600*
Loan on insurance policy (to pay bills)
1,000 Total
$ 5,205 Net value of assets awarded to petitioner
$ 5,095 *616 Although at first blush these figures indicate a substantial disparity between the value of the assets received by Colleen and petitioner, further observation shows this appearance deceptive. First, we eliminate the four asterisked items because there is no evidence of record to support them. Second, there is a factual dispute as to the amount that should be attributed to "bank & savings accounts." At trial, petitioner estimated this amount as $ 800, while Colleen testified that the savings account was completely exhausted by the time of divorce. We found Colleen's testimony on this item wholly credible but, because there may have been more than one account, we shall use petitioner's $ 800 figure. Third, we add two assets received by petitioner in the settdlement: The $ 9,000 lien on the house awarded to petitioner pursuant to paragraph 1 of the divorce decree as set forth in our findings and the personal injury claim. The $ 9,000 obligation reflected by the lien was to be paid by Colleen on her remarriage, on her sale of the house, or on the expiration of 5 years after the divorce. It was a personal obligation secured by *617 the lien on the house. See Siewert v. Commissioner,72 T.C. at 335; cf. Edwards v. Commissioner,22 T.C. at 69. We think a realistic approach would be to include the lien at its discounted value, which petitioner estimated as $ 7,200, both as a liability for Colleen and as an asset for petitioner. It makes, of course, no difference when comparing the net values of assets received whether the lien is included as a $ 9,000 or $ 7,200 liability for Colleen as long as a corresponding amount is included as an asset for petitioner. The personal injury claim allotted to petitioner was pending in a local court. A cause of action by a spouse for personal injury is community property under Washington law. Perez v. Perez,11 Wash. App. 429, 523 P.2d 455, 456 (1974); Foster v. Williams,4 Wash. App. 659, 484 P.2d 438, 440 (1971); Erhardt v. Havens, Inc.,53 Wash.2d 103, 330 P.2d 1010, 1011 (1958). As a result of the injury, petitioner had collected insurance payments of $ 34,000 to $ 38,000 as of the date of trial in the instant case and still had the court action pending with respect to the claim. *618 The record does not reveal when the insurance payments were received, but Colleen's testimony shows clearly that between $ 14,000 and $ 18,000 were received after the divorce. The divorce decree itself refers only to the "claim," and not to any proceeds already received; moreover, there is no evidence to suggest that any proceeds had been transformed into a community asset which was shared by Colleen in connection with the divorce. We think the evidence may be fairly interpreted to show that petitioner received between $ 34,000 and $ 38,000 from this community property claim after the divorce and still had the court action pending. While the amount received in settlement of his insurance claims does not necessarily equal the value of the underlying claim at the date of divorce, the paydment is at least some evidence of value, and we have no other evidence on which the base a value estimate. We think a reasonable estimate of the personal injury claim's value at the time of divorce is $ 36,000. With these adjustments, we recompute the division of assets as follows: Colleen
Assets per petitioner's brief
$ 71,025
Less unsubstantiated (asterisked) amounts: $ 700 discount of amounts in bank accounts
$ 700
Craft shop equipment
1,100
Utility share
100
1,900
Total assets
$ 69,125
Less liabilities (using a lien value of $ 7,200)
16,200
Value of assets received by Colleen
$ 52,925
Petitioner
Assets per petitioner's brief
$ 10,300
Plus: Lien
7,200
Personal injury claim
36,000
Total assets
$ 53,500
Liabilities per brief
$ 5,205
Less unsubstantiated (asterisked) amounts: Insurance
120
Open charge account
600
4,485
Value of assets received by petitioner
$ 49,015
*619 These figures indicate that the division of assets was thus approximately equal, with no substantial disparity. We note, too, that these computations use petitioner's appraised value of the Gig Harbor property of $ 59,000 which did not take into account the termite infestation and consequent damage to the building nor the need to repair the roof. We note also that Colleen testified that her attorney and petitioner's attorney used the $ 36,700 figure as the basis of their partition computation and that petitioner stated that he was "happy" about the division. We found Colleen's testimony credible, and we infer from this evidence that petitioner himself was not convinced at the time of the divorce settlement that the value of the house was indeed the full $ 59,000. Because the value of the personal injury claim is sufficient to bring the settlement into an approximate balance, we need not ascertain the house's value. The fact that the property division was closed on the basis of the $ 36,700 value only serves to emphasize petitioner's complete failure to carry his burden of proving a substantial disparity in the partition of the community property. Petitioner seemed to argue at *620 trial that his decree-imposed obligations for Kenneth's support (including college and medical expenses) should be considered in valuing his distribution of community property. We disagree. Adequate provision for Kenneth's welfare was presumably "of an much interest to petitioner as to his wife" and "can not be assumed to have been * * * consideration for the * * * settlement of their community property rights." Rouse v. Commissioner,6 T.C. 908, 913 (1946), affd. 159 F.2d 706 (5th Cir. 1947); see Siewert v. Commissioner,72 T.C. at 335, fn. 4. [5]
To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Petitioner relies primarily on the allocation of the residence to Colleen as the basis for the allegedly unequal division of property. He testified at trial that he had other financial losses from the divorce, stemming from obligations to pay a second mortgage and other family expenses. These Findings of Fact take into account all items of which there is evidence in the trial record.↩
2. Initially, a partner joined Colleen in this ceramics enterprise, but Colleen bought out the partner's interest shortly after operations commenced.↩
1. In this "computation," petitioner used the "appraised value" of the property as $ 59,500. On brief, he has corrected this value to the $ 59,000 figure actually given by the appraiser.↩
3. Under Washington law (subject to exceptions irrelevant here) property acquired "after marriage by either husband or wife or both, is community property." Wash. Rev. Code Ann. sec. 26.16.030↩ (West's Supp. 1981).
4. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted. All "Rules" references are to the Tax Court Rules of Practice and Procedure.↩
1. No evidence of record to support this amount.↩
1. No evidence of record to support this amount.↩
5. Because we find that the division of community property was substantially equal, we need not consider respondent's other arguments, that the loss, if any, on the sale of the house is a nondeductible personal loss and that petitioner has not shown the community's adjusted basis for the various assets which he relinquished (sold) in the settlement; any gain or loss on the settlement would, of course, be computed with reference to such adjusted basis.↩