## HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* EUBANK.

No. 205.   Argued October 25, 1940.—Decided November 25, 1940.

*Mr. Arnold Raum*, with whom *Solicitor General Biddle, Assistant Attorney General Clark*, and *Messrs. J. Louis Monarch* and *Morton K. Rothschild* were on the brief, for petitioner.

*Mr. Harry J. Rudick*, with whom *Mr. John W. Drye, Jr.* was on the brief, for respondent.

By leave of Court, *Mr. W. A. Sutherland* filed a brief, as *amicus curiae*, urging affirmance.

Mr. Justice Stone delivered the opinion of the Court.

This is a companion case to *Helvering* v. *Horst*, *ante*, p. 112, and presents issues not distinguishable from those in that case.

Respondent, a general life insurance agent, after the termination of his agency contracts and services as agent, made assignments in 1924 and 1928 respectively of renewal commissions to become payable to him for services which had been rendered in writing policies of insurance under two of his agency contracts. The Commissioner assessed the renewal commissions paid by the companies to the assignees in 1933 as income taxable to the assignor in that year under the provisions of the 1932 Revenue Act, 47 Stat. 169, § 22 of which does not differ in any respect now material from § 22 of the 1934 Revenue Act involved in the *Horst* case. The Court of Appeals for the Second Circuit reversed the order of the Board of Tax Appeals sustaining the assessment. 110 F. 2d 737; 39 B. T. A. 583. We granted certiorari October 14, 1940.

No purpose of the assignments appears other than to confer on the assignees the power to collect the commis-

sions, which they did in the taxable year. The Government and respondent have briefed and argued the case here on the assumption that the assignments were voluntary transfers to the assignees of the right to collect the commissions as and when they became payable, and the record affords no basis for any other.

For the reasons stated at length in the opinion in the *Horst* case, we hold that the commissions were taxable as income of the assignor in the year when paid. The judgment below is

*Reversed.*

The separate opinion of MR. JUSTICE McREYNOLDS.

The cause was decided upon stipulated facts. The following statement taken from the court's opinion discloses the issues.

"The question presented is whether renewal commissions payable to a general agent of a life insurance company after the termination of his agency and by him assigned prior to the taxable year, must be included in his income despite the assignment.

"During part of the year 1924 the petitioner was employed by the Canada Life Assurance Company as its branch manager for the state of Michigan. His compensation consisted of a salary plus certain commissions. His employment terminated on September 1, 1924. Under the terms of his contract he was entitled to renewal commissions on premiums thereafter collected by the company on policies written prior to the termination of his agency, without the obligation to perform any further services. In November 1924 he assigned his right, title, and interest in the contract as well as the renewal commissions to a corporate trustee. From September 1, 1924 to June 30, 1927, the petitioner and another, constituting the firm of Hart & Eubank, were general agents in New York City for the Aetna Life Assurance Com-

pany, and from July 1, 1927 to August 31, 1927, the peti-
tioner individually was general agent for said Aetna Com-
pany. The Aetna contracts likewise contained terms
entitling the agent to commissions on renewal premiums
paid after termination of the agency, without the per-
formance of any further services. On March 28, 1928,
the petitioner assigned to the corporate trustee all com-
missions to become due him under the Aetna contracts.
During the year 1933 the trustee collected by virtue of
the assignments renewal commissions payable under the
three agency contracts above mentioned, amounting to
some $15,600. These commissions were taxed to the peti-
tioner by the Commissioner, and the Board has sustained
the deficiency resulting therefrom." 110 F. 2d 738.

The court below declared—

"In the case at bar the petitioner owned a right to
receive money for past services; no further services were
required. Such a right is assignable. At the time of as-
signment there was nothing contingent in the petitioner's
right, although the amount collectible in future years
was still uncertain and contingent. But this may be
equally true where the assignment transfers a right to
income from investments, as in *Blair* v. *Commissioner*,
300 U. S. 5, and *Horst* v. *Commissioner*, 107 F. 2d 906
(C. C. A. 2), or a right to patent royalties, as in *Nelson* v.
*Ferguson*, 56 F. 2d 121 (C. C. A. 3), certiorari denied,
286 U. S. 565. By an assignment of future earnings a
taxpayer may not escape taxation upon his compensa-
tion in the year when he earns it. But when a taxpayer
who makes his income tax return on a cash basis assigns
a right to money payable in the future for work already
performed, we believe that he transfers a property right,
and the money, when received by the assignee, is not
income taxable to the assignor."

Accordingly, the Board of Tax Appeals was reversed;
and this, I think, is in accord with the statute and our
opinions.

The assignment in question denuded the assignor of all right to commissions thereafter to accrue under the contract with the insurance company. He could do nothing further in respect of them; they were entirely beyond his control. In no proper sense were they something either earned or received by him during the taxable year. The right to collect became the absolute property of the assignee without relation to future action by the assignor.

A mere right to collect future payments, for services already performed, is not presently taxable as "income derived" from such services. It is property which may be assigned. Whatever the assignor receives as consideration may be his income; but the statute does not undertake to impose liability upon him because of payments to another under a contract which he had transferred in good faith, under circumstances like those here disclosed.

As in *Helvering* v. *Horst,* just decided, the petitioner relies upon opinions here; but obviously they arose upon facts essentially different from those now presented. They do not support his contention. The general principles approved in *Blair* v. *Commissioner,* 300 U. S. 5, and applied in *Helvering* v. *Horst,* are controlling and call for affirmation of the judgment under review.

The CHIEF JUSTICE and MR. JUSTICE ROBERTS concur in this opinion.