## WOOD PROCESS COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110072.   Promulgated September 30, 1943.

*Lucien H. Boggs, Esq.,* for the petitioner.
*J. Marvin Kelley, Esq.,* for the respondent.

OPINION.

DISNEY, *Judge:* In January 1933 the petitioner granted to Nelio-Resin Corporation an exclusive license to operate under certain patents for a term of two years from August 1932, in consideration of the issuance by Nelio to the petitioner of 1,000 shares of its total authorized capital stock of 11,000 shares. Nelio received also an option to extend the license for the full term of the patents, subject to the obligation to pay royalties of $1.20 a ton on all products which it produced during the extended period. In February 1934 the Glidden Co., the owner of the remaining 10,000 shares of Nelio stock, as a condition for increasing its investment in that corporation, required the petitioner among other things to sell its holdings in Nelio to Glidden, to redeem its own preferred stock. and to agree to issue to Glidden for $30,000 sufficient of petitioner's common stock to constitute Glidden the owner of 30 percent of all outstanding stock. A contract including the above terms was executed on February 20, 1934. The purchase price was to be paid by Glidden over a period of about four years, during which time the petitioner agreed to credit 30 percent of any royalties received by it on the unpaid balance of purchase price. The contract contained the following provision:

6. All moneys and stock received by Process under this agreement (except such portion of said moneys as shall be required for the purpose of redeeming said issued and outstanding preferred stock, and for the purpose of paying the present indebtedness of Process, and such portion as Process may elect to retain in its treasury as operating capital) shall be paid and distributed by Process to the holders of its common stock of record on February 1, 1934, ratably and in proportion to stock held by them.

In the fall of 1934 Nelio exercised its option to extend its license for the remainder of the term of the patents. In January 1936 Glidden dissolved Nelio, took over its assets, including the license contract, and thereafter itself operated as licensee. Until January 21, 1938,

when Glidden completed the payments for petitioner's stock, the petitioner, in accordance with its agreement, credited 30 percent of all royalties received by it on the unpaid balance of the purchase price, such credits aggregating about $11,250. The balance of the agreed price was paid in cash. The portions of the royalties so credited to Glidden were not entered by the petitioner on its books nor reported on its returns as income, but were immediately distributed to stockholders of record on February 1, 1934, in proportion to their respective holdings.

The question for decision is whether the respondent correctly determined that royalties constituted taxable income in their entirety, or whether the petitioner properly excluded the 30 percent of each payment credited to Glidden and distributed to stockholders. In our opinion, the respondent's determination must be sustained. There can be no doubt that as a general rule royalties received in consideration of the grant of a license to operate under or use a patent constitute taxable income. *Estate of Ernest Gustav Hoffman*, 8 B. T. A. 1272, 1274, and cases there cited; *Rafael Sabatini*, 32 B. T. A. 705, 711; modified, 98 Fed. (2d) 753. Our only inquiry is whether any of the circumstances present in this case operate to take it out of that rule. The petitioner contends that the execution and performance of the contract of February 1934 with Glidden have that effect. We think otherwise. It is true that prior to the execution of the contract with Glidden no income had been realized, and it may be assumed for purposes of argument that, had the petitioner refused to accede to the conditions imposed by Glidden, the latter would not have taken steps to make operations profitable, and therefore that no income would have been realized. Thus, the petitioner's reasons for entering into the contract are apparent, and under the circumstances the fact that it did execute and perform it would constitute consideration sufficient to support the promise by Glidden to increase its investment in Nelio. But the question of the legal effect of the contract upon income tax depends upon the contract itself, rather than upon circumstances motivating its execution. Here the petitioner was under obligation to credit 30 percent of all royalties to Glidden. It is difficult to see upon what theory that obligation may be said to deprive the amounts in question of their character as royalties and as income. Standing alone, it does not even amount to an assignment of income. Its only effect was to reduce the amount of money the petitioner received in exchange for its stock, and to reduce Glidden's cost correspondingly. Cf. *Indian Creek Coal & Coke Co.*, 23 B. T. A. 950.

According to the petitioner it was under further obligation to distribute the amounts in question to the persons who were its stock-

holders of record on February 1, 1934. The contract, however, required distribution only of moneys received under "this agreement," except such portions as might be required for redemption of preferred stock, for payment of indebtedness, or as petitioner might elect to retain for operating capital. The royalties were not received by the petitioner under "this agreement," but under the preexisting license contract with Nelio. Moreover, even if the parties intended that royalties be included, and if the contract permits such a construction, there is still no evidence to show the amounts required for the redemption of preferred stock, for payment of indebtedness, or what portions the petitioner might have elected to retain in its treasury; therefore the amount distributable is unascertainable. Thus it does not appear that the contract imposed any obligation upon the petitioner to make distribution of the amounts in question, i. e., the royalties, to its stockholders. However, even under the petitioner's theory that it was bound to distribute, the most that can be said is that the provision in question effected an assignment of income, and it is well established that such an assignment, however binding, does not operate to prevent taxation of the income to the assignor. *Lucas* v. *Earl*, 281 U. S. 111; *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122; *Harrison* v. *Schaffner*, 312 U. S. 579. It is true that at the time of the "assignment" the petitioner had no vested right to future income, nor even any certainty that it would subsequently become entitled to receive income, but in this respect the situation is not different from that in *Lucas* v. *Earl*, *supra*, where in 1901 the taxpayer by contract agreed that all earnings and property which he might receive at any future time would be received and owned by him as a joint tenant with his wife. The Supreme Court held that the whole of the salary and attorney fees earned by the taxpayer in 1920 and 1921 were taxable to him. The determinative factor in this case is that the property constituting at first the potential and later the actual source of the income remained at all times in the petitioner's ownership. Whether the patents themselves or the license agreement with Nelio be considered the income-producing property is immaterial, since the petitioner owned both, and never purported to dispose of any interest in either. We have held that earnings of a corporation, though never paid to it, but paid to its stockholders, nevertheless constitute income to such corporation. *Gold & Stock Telegraph Co.*, 26 B. T. A. 914; affd., 83 Fed. (2d) 465; certiorari denied, 299 U. S. 564.

The petitioner contends that 30 percent of the royalties were distributed to stockholders as compensation for the diminution of their proportionate interests in the equity of the corporation caused by the issuance of stock to Glidden. However true, that does not alter the fact that the patents and the license contract remained the petitioner's

property, nor the consequent conclusion that the income therefrom is taxable to it. Cf. *Gray Processes Corporation*, 43 B. T. A. 624; affd., 122 Fed. (2d) 1021; *Simms Petroleum Co.*, 28 B. T. A. 1107; affd., 74 Fed. (2d) 561; *W. L. Shore*, 26 B. T. A. 389. Even if the contract of February 20, 1934, could be considered as in substance a contract by the petitioner's stockholders individually to sell 30 percent of their respective holdings, an agreement that they receive a like percentage of all royalties would not have effected a transfer to them of any interest in the patents or the license contract. See *Helvering* v. *O'Donnell*, 303 U. S. 370. The petitioner held one contract with Nelio under which it would become entitled to receive royalties taxable to it if Nelio should elect to extend its license. It then entered into another contract with Glidden by which it obligated itself to make certain application of the royalties it would receive from Nelio if the license should be extended. The two separate contracts were with two separate entities. The character of the rights enjoyed by the petitioner under the one was not affected by the contractual obligations imposed upon it by the other; and the same would be true if we consider the stockholders as agreeing to sell stock and receive royalties. The character of the royalties would not be changed.

The petitioner contends in the alternative that the amounts in question were either paid on the purchase price for the stock sold to Glidden, or constituted payments by the petitioner for the development of its patents, and in either event the moneys received were capital items. The facts disclose no justification for upholding either of those contentions. Even if the separate corporate entities of Glidden and Nelio were to be disregarded, the income character of the royalties would not be altered by reason of the fact that the petitioner bound itself to credit a portion of them on the purchase price of the stock. As has been pointed out, the most that may be said is that such an allocation amounted only to an adjustment of the purchase price. We find no basis for the argument that the amounts in question were capital expenditures made for the development of the patents. The only payments made by the petitioner were in the form of distributions to its stockholders, having no regard to patent development.

The petitioner's last contention has to do only with royalties paid subsequent to the time when Glidden acquired Nelio's interest in the license contract, assuming the obligations and agreeing to be responsible for all the provisions thereof. Thirty percent of the royalties paid after that time, it is urged, can not be income because the same legal entity was both paying the moneys and receiving that percentage as a credit against the purchase price of the stock. It must be remembered, however, that Glidden was obligated to the peti-

tioner under two separate contracts, the one requiring it to pay royalties and the other requiring it to pay for certain stock. The effect of the petitioner's contention is that the stock purchase contract effected a modification or a partial abrogation of the license contract, just as if a new agreement had been entered into between it and Glidden providing that thereafter royalties should be paid at the rate of $.84 a ton on all production, or 70 percent of the $1.20 per ton theretofore agreed to be paid, and that for each such royalty payment there should be a contemporaneous payment of $0.36 not as royalty but on account of the purchase price of petitioner's stock, until January 17, 1938, or until such earlier date as the aggregate of the amounts so applied upon the price of the stock plus other cash payments therefor should equal $30,000; and that thereafter the royalty payments be again increased to $1.20 a ton. If the license contract had been modified so to provide, the question whether such provision could affect the character of the payments as income would be presented. That was not done, however. On the contrary, that contract remained in full force in accordance with its terms. The old royalty contract with Nelio was carefully assigned to Glidden, which bound itself to its terms. That was the underlying and preexisting contract, the performance of which will not be completed until the terms of the letters patent have expired. The petitioner does not deny that the payments made thereunder constitute taxable income in their entirety, except for the relatively short period ending in January 1938. Thereafter, on petitioner's theory they would be royalties, as the license contract calls them. We hold that the stock purchase contract did not effect a modification of the license contract, and that the income character of the payments made under the latter was not altered because of the application which petitioner agreed to make and did make of them. It follows that the full amounts paid under the license contract constituted taxable income.

*Decision will be entered for the respondent.*