LAZARUS W. MACIOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Macior v. Commissioner
Docket No. 16970-81.
United States Tax Court
T.C. Memo 1984-255; 1984 Tax Ct. Memo LEXIS 419; 48 T.C.M. (CCH) 91; T.C.M. (RIA) 84255; May 9, 1984. Alan G. Segedy, for the petitioner. Richard S. Bloom, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined the following deficiency in and additions to petitioner's Federal income taxes: Additions
Year
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6654(a)
1978
$4,249.51
$1,062.38
$135.79
The issues for decision are: (1) whether petitioner's gross income includes his teaching salary and savings accounts interest; (2) whether petitioner is subject to an addition to tax under section 6651(a)(1) for failure to file an income tax return for the taxable year 1978; and, (3) whether petitioner is subject to an addition to tax under section 6654(a) for underpayment of estimated tax. Some of the facts have been stipulated and are found accordingly. The stipulations of facts and attached exhibits are incorporated herein by this *421 reference. Petitioner resided in Akron, Ohio, when he filed his petition in this case. Petitioner was ordained a Roman Catholic priest in 1956, and, through the year 1978, continued to be a member of the Assumption of the B.V.M. Province of the Order of Friars Minor ("the Order"). The Order was established for communal living. In 1954, petitioner executed a vow of poverty, executed a declaration agreeing to accept sacred orders, and took a vow of chastity. Petitioner received a B.A. degree and a M.A. degree in botany from Columbia Universtiy. Petitioner received a Ph.D. in botany and biology from the University of Wisconsin in 1959. In the fall of 1959, petitioner began teaching biology at Bishop Newman High School in Philadelphia. After teaching at the high school, petitioner taught for two years as an instructor in biology at St. Francis College, and for two years as an associate professor of biology at Marquette University. Petitioner next taught at Loras College as an assistant professor of biology. In 1967, petitioner obtained a teaching position as an assistant professor of biology at the University of Akron ("University") based upon his qualifications as a professor *422 of biology. The University was aware that petitioner was a priest. By letter dated April 11, 1967, petitioner notified the order of his acceptance of the position with the University. Petitioner's appointment was approved by the University on April 19, 1967. On August 25, 1969, the Order instructed petitioner to accept the duties of associate professor of biology at the University. Petitioner has taught continually at the University since his initial appointment in 1967. Through the year 1978, petitioner's contracts were executed by his signing "Lazarus W. Macior." Petitioner's professorial services were subject to the policies of the Board of Trustees and the University Faculty Manual. Petitioner did not wear clerical garb at the University. In 1978, petitioner taught courses in plant anatomy, plant morphology, organic evolution and organic evolution discussion. Petitioner determined the courses he taught, the content of the courses, and the methods used in teaching them. The theological concepts covered in the courses taught by petitioner were not limited to Catholic theology. The salary for petitioner's teaching services was paid by checks payable to petitioner. *423 During 1978, petitioner received $27,940.00 from the University. No Federal income tax was withheld from the salary paid by the University in 1978, and petitioner made no estimated tax payments. Petitioner did not file a Federal income tax return for 1978. Petitioner participated in the State Teacher's Retirement System at the Universtiy, and amounts were withheld from the salary checks for petitioner's contributions to the System. Petitioner was provided with life and medical insurance by the University. During 1978, petitioner maintained two savings accounts and a checking account in his own name. The savings accounts earned interest in 1978 amounting to $849.22. During 1978, respondent began to audit petitioner's 1977 tax year. After the audit, petitioner changed the name on his accounts to "Franciscan Friars, Lazarus W. Macior (Agent)." In 1975, petitioner paid cash for a single family home in Akron. The house was purchased in the name of Walter A. Macior, another name by which petitioner is known. Petitioner has resided in this house since purchasing it. In 1979, petitioner transferred the property to "Lazarus Walter Anthony Macior, O.F.M., Agent for Franciscan *424 Friars, Pulaski, Wisconsin." An application for exemption from real property filed by the Order through petitioner in 1980, was denied. During 1978, petitioner held title in his name to two motorcycles, a station wagon and a travel trailer. Petitioner purchased another travel trailer in his own name in 1979, disposing of the first trailer at that time. In 1979, petitioner transferred the titles to all his vehicles to "Fransciscan Friars." Petitioner did not send the Order any of the salary he received from the University or any other money. Petitioner gave $1,481.95 of his 1978 salary to various charities, spent $2,314.31 on books, subscriptions, memberships and xeroxing, and spent $2,950.45 on summer travel. Petitioner filed monthly financial reports with the Order. On these reports, petitioner stated monthly expenses for rent and for car lease. Petitioner made no expenditures for such items. The General Constitutions of the Order provides: Article 40. 1. All the friars are to so live the common life that "like a family united in Christ" they may begin anew the work of fraternal fellowship. This demands a single-hearted observance of the Rule and Constitutions, *425 similar life-styles, participation in the activities of the life of the brotherhood-especially common prayer, the apostolate and work within the friary-and the funneling of all gain to the community for its own use. * * * Article 75. 1. The ownership of buildings and goods which the friars need for their life and work must really remain under the control of those whom the friars serve-our benefactors, the Church or the Holy See. 2. That they be faithful to their call in the concrete conditions of life, the friars should always seek new forms for expropriation compatible with present realities. 3. With the permission of their Superiors, the friars may undertake the necessary legal acts before civil law with respect to ownership, conscious, however, of numbers 1 and 2 of this article and article 76:1. Article 76. 1. Since the friars have given up personal ownership, they share the goods the community uses. As the faithful steward, each friar must answer for the goods he enjoys. 2. Whatever income the friars obtain as wages for their work or for any other reason, must be given over for the use of the community. Such income is to be used in accordance with *426 the Constitutions. 3. The friars should be concerned over what is entrusted to them. They should not discard these goods nor should they donate, sell or exchange them, unless it be a minor matter, without the permission of the Superiors. 4.Mindful of their poor state, the friars should be eager to live a life which is truly poor in fact as well as spirit. As individuals and as a brotherhood, the friars' poverty should be so recognizable that it offers witness to the Church of the poverty of the Gospel. Section 61 states the general rule that gross income includes all income from whatever source derived. It includes in gross income not only those items specifically enumerated, but "all gains except those specifically exempted." Commissioner v. Glenshaw Glass Co.,348 U.S. 426 430 (1955); section 1.61-1(a), Income Tax Regs.Sections 61(a)(1) and (4) specifically include compensation for services and interest as income items. The salary received by petitioner from the University and the interest earned on petitioner's savings accounts clearly *427 fall within the definition of gross income. Petitioner bears the burden of proving that income is excluded. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. The mere fact that a Roman Catholic priest has executed vows of proverty and obedience does not exempt him from income taxes under all circumstances. This Court previously held that: A member of a religious order under a vow of poverty is not immune from Federal income tax by reason of his clerical status or his vow of proverty, but is subject to tax to the same extent as any other person on income earned or received in his individual capacity. McGahen v. Commissioner,76 T.C. 468, 478 (1981), affd. 720 F.2d 664 (3d Cir. 1983). See Kelley v. Commissioner,62 T.C. 131 (1974). An individual who turns over his entire income to a church is still taxable on that income, subject to the deduction allowed for charitable contributions. Riker v. Commissioner,244 F.2d 220 (9th Cir. 1957), affg. a Memorandum Opinion of this Court, cert. denied. 355 U.S. 839 (1957). Petitioner *428 argues that he was acting as an agent of the order when he received the amounts in issue. Where an agent receives income for a principal, it is the income of the principal, not of the agent. Maryland Casualty Co. v. United States,251 U.S. 342 (1920). Where there is no agency relationship, it is a basic rule of tax law that an assignment by a taxpayer of income to another person is ineffectual to relieve him of income tax liability, regardless of the motivation behind the assignment. Lucas v. Earl,281 U.S. 111 (1930). See also Helvering v. Horst,311 U.S. 112 (1940); Helvering v. Eubank,311 U.S. 122 (1940).
Petitioner relies on several revenue rulings to support his position, and upon his assertion that he was subject at all times to his vows of poverty and obedience. Whatever force may be attributed to these rulings on the basis of the facts assumed therein, they are not applicable here, since, in our judgment, petitioner has not shown he was acting as an agent of the Order in 1978 in respect to the services he performed or the compensation he received. [2]
*429 Petitioner's contract with the University was signed by him as an individual. Petitioner held his bank accounts in his own name, and, he used his income as he saw fit. Petitioner participated in the University's retirement system, and he received medical and life insurance. The University paid petitioner's salary directly to him, and petitioner never remitted any part of his earnings to the Order. As in McGahen v. Commissioner,supra at 479, "[t]he income received by him was not received on behalf of a separate and distinct principal, but was received by him in his individual capacity." The University looked to petitioner, not to the Order, for the performance of the teaching services required in petitioner's contract. We note that, after respondent had begun an audit of petitioner for tax year 1977, [3] petitioner changed the name on his bank accounts to suggest an agency posture. In 1979, he also transferred title of his home and vehicles to indicate ownership by the Order. These ex post facto attempts to negate his personal ownership do not transform the facts as they existed during 1978; nor do they alter the foregoing conclusion that petitioner *430 received and disposed of income in an individual capacity. Petitioner's reliance upon his vows of obedience and poverty is misplaced. Petitioner's case resembles that of Kelley v. Commissioner,supra. In Kelley, we used similar factors to those present in the instant case to arrive at the conclusion that the taxpayer was not living as a priest during the year in issue. In the instant case, petitioner lived apart from the Order and the communal lifestyle for which the Order was established. Petitioner wore nonclerical clothing and performed no religious duties. He earned a salary which he used to support himself, paying his expenses and depositing funds in his checking and savings accounts. No limitations were placed on the use which petitioner could make of his earnings, and petitioner paid for trips, books, memberships, and gave sums to various charities. Petitioner never made a true accounting to the Order of how he spent his earnings. He included expenses for rent and car lease on his reports when he had incurred no such expenses. Petitioner offered no evidence to explain these discrepancies, *431 other than unpersuasive self-serving testimony that these were "budgetary items." Petitioner failed to call his superiors as witnesses at trial, a circumstance which leads to the inference that their testimony would have been unfavorable to him. See Pollack v. Commissioner,47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968).
Petitioner accepted his position in 1967 without prior approval from the Order, and was not directed to assume his position there until 1969. His services were subject to the policies of the University. His actions appear contrary to the Articles of the Order's Constitutions. For the reasons set forth above, we conclude that petitioner was not living as a priest during the year in issue and, in fact and in substance, neither acted in conformance with his vow of poverty and Articles 75 and 76 of the General Constitutions of the Order, nor acted under the sacred orders of the Order. In light of these facts, we cannot say that petitioner was acting as an agent of the Order when he received the amounts in issue. Accordingly, since these amounts are clearly within the scope of section 61(a), they are includable in petitioner's *432 gross income for 1978. Petitioner's assertion that taxation of the income earned at the University violates the free exercise clause of the First Amendment is unworthy of extended comment. There is no restraint here on the constitutional liberty of religion which would tend to suppress its exercise. See United States v. Lee,455 U.S. 252 (1982). See also Murdock v. Pennsylvania,319 U.S. 105, 112 (1943). During the year in issue, petitioner had gross income exceeding $2,950.00, and was, therefore, required to file a Federal income tax return. Section 6012(a)(1). Though petitioner had filed returns for prior years, no return was filed for 1978. Therefore, petitioner is subject to the addition to tax under section 6651(a)(1). Bebb v. Commissioner,36 T.C. 170 (1961). Our above conclusions make clear that petitioner incurred Federal income tax liability for 1978. No Federal income tax was withheld from petitioner's salary, and he made no estimated tax payments. Under these circumstances, petitioner is subject to an addition to tax under section 6654(a) for failure to pay estimated income tax. The application of this section *433 is mandatory. Estate of Ruben v. Commissioner,33 T.C. 1071 (1960). We have considered petitioner's other arguments and find them unpersuasive. Therefore, we hold that the deficiency and additions to tax under sections 6651(a)(1) and 6654(a) are correct as determined by respondent. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue.↩
2. For the latest revenue ruling relating to vows of poverty see Rev. Rul. 84-13, I.R.B. 1984-4 I.R.B. 5↩.
3. Tax year 1977 is not before us in the instant case.↩