RICHARD W. KOCHANSKY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kochansky v. Commissioner
Docket No. 4691-92
United States Tax Court
T.C. Memo 1994-160; 1994 Tax Ct. Memo LEXIS 161; 67 T.C.M. (CCH) 2665; T.C.M. (RIA) 94160; April 18, 1994, Filed *161 Decision will be entered under Rule 155. T is an attorney. In September 1983 he entered into an agreement with a client as to fees in respect of a medical malpractice suit to be brought on behalf of the client. The agreement provided that the client would bear costs expended and that T would receive as compensation for his personal services 33-1/3% of any recovery prior to initiating the lawsuit and 40% of any recovery subsequent to initiating the lawsuit. T filed the malpractice suit in October 1984. On July 23, 1985, T and his wife were divorced. Their property settlement agreement provided in respect of amounts that T might receive at the conclusion of the malpractice suit that T would be entitled to retain the reimbursements of costs but that T and his wife would equally divide the remaining amount, i.e., his contingent fee. The malpractice suit was subsequently settled and dismissed by court order in December 1987. Held: The entire income earned by T as his contingent fee in the malpractice suit is includable in his gross income, notwithstanding that his ex-wife's share was paid to her. Lucas v. Earl, 281 U.S. 111 (1930). Two cases *162 relied upon by T, Jones v. Commissioner, 306 F.2d 292 (5th Cir. 1962), revg. and remanding T.C. Memo. 1960-115, and Cold Metal Process Co. v. Commissioner, 247 F.2d 864 (6th Cir. 1957), revg. 25 T.C. 1333 (1956), distinguished. Richard W. Kochansky, pro se. For respondent: Robert S. Scarbrough. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined a deficiency in income tax of $ 12,916 and the following additions to tax for petitioner's taxable year 1987: $ 1,897 under section 6651, $ 671 under section 6653(a), and $ 3,229 under section 6661. [1] After concessions, the primary issue is whether contingent fees assigned to petitioner's former wife in a property settlement were properly includable in his gross income. The facts have been stipulated. *163 Petitioner is an individual taxpayer engaged in the practice of law. At the time of the filing of his petition, he resided in Hayden Lake, Idaho. The controversy herein stems from a lawsuit filed by petitioner on behalf of Dolly R. McNary (Mrs. McNary). Mrs. McNary, individually and as conservator and guardian of Carol R. McNary, retained petitioner in his capacity as an attorney to represent them in a medical malpractice claim against Robert Berghan, M.D. Dolly R. McNary and Carol R. McNary are hereinafter collectively referred to as "the McNarys". The terms of petitioner's legal representation of the McNarys in the lawsuit against Dr. Berghan were reflected in an agreement entitled "Contract of Retainer". The agreement contained the following pertinent terms and conditions: Actual costs expended in bringing the case to trial, or retrial, and to prosecute an appeal, if any, are to be paid by the Client. As compensation for such legal services rendered, or to be rendered by the Attorney, the Clients agree to pay the Attorney in accordance with the following fee schedule: (a) 33-1/3% of any recovery prior to the Attorney initiating a lawsuit; (b) 40% of any recovery *164 subsequent to the Attorney initiating a lawsuit.
The agreement was dated September 25, 1983. Petitioner thereafter performed legal services for the McNarys from that date through 1987, including the filing of a lawsuit in Idaho State Court, described immediately below. On October 19, 1984, petitioner, acting as the McNarys' legal representative, filed on their behalf a lawsuit entitled "McNary v. Berghan", case No. 23201, in the First Judicial District Court, State of Idaho. On July 23, 1985, petitioner and Carol A. Kochansky (Mrs. Kochansky), then husband and wife, were divorced. Pertinent portions of the property settlement between them provided as follows: (C) Neither [Husband nor Wife] shall have any claim in the earnings, or assets/liabilities of the respective professions, business or employment of the other, except that at the conclusion, either by way of settlement or judgment, of Case No. 23201, McNary v. Berghan, filed in the First Judicial District Court, State of Idaho, the proceeds received by Husband as expenses and attorney fees in that case shall be divided between Husband and Wife when received by Husband as follows: (1) Husband is first *165 reimbursed for those usual costs and out of pocket expenses incurred, including but not limited to consulting fees due to other attorneys or medical personnel or expert witnesses, filing and service/fees, deposition costs and witness fees, travel and mileage, photocopy, etc., then (2) Husband and Wife shall equally divide the remaining amount and each shall report and pay all applicable income taxes on such amount as each receives. In the event that the I.R.S. determines that Husband must report and pay taxes on the entire fee, then Wife shall pay to Husband the amount that she is entitled to as a refund had she not claimed the amount received by her as income.
The McNarys' lawsuit against Dr. Berghan was subsequently settled and dismissed by court order in December 1987. During that same month, a check in the amount of $ 42,706 was paid into an account designated as petitioner's "Attorney Trust Account" for services that he performed as the McNarys' attorney. [2] *167 Petitioner subsequently made the following disbursements from the Attorney Trust Account: $ 18,773 to his former wife, then known as Carol Peterson, [3] $ 3,510 for various expenses relating to the McNarys' lawsuit *166 against Dr. Berghan, and finally amounts totaling $ 20,423 payable to himself. The Commissioner determined, inter alia, that petitioner erroneously excluded $ 42,840 of "business gross receipts" from gross income, and that such amount should have been reported on Schedule C of his 1987 Form 1040 individual income tax return. Although the $ 42,840 was not designated as such in the deficiency notice, it is clear from the record that the amount relates to the legal fees ultimately paid to petitioner's Attorney Trust Account. [4] However, subsequently, at the calendar call of the present case, the parties orally stipulated that, of the $ 42,840 reflected in the Commissioner's deficiency notice, petitioner had already "reported income of $ 20,423 on his 1987 income tax return". (Transcript at p.3) The parties also agreed that the $ 20,423 amount was "part of a settlement received in the case of McNary v. Berghan". Therefore, only the $ 22,417 remaining out of the $ 42,840 settlement reflected in the deficiency notice is still in issue. The $ 22,417 in issue consists of several components. First, as noted above, $ 3,510 was paid out of petitioner's Attorney Trust Account for various expenses relating to the McNary lawsuit, and $ 134 (see note 4) represented the escrow agent's fee. Obviously, the receipt of these amounts ($ 3,510 and $ 134) represented *168 gross income to petitioner reportable in Schedule C, notwithstanding that he was probably entitled to deduct all or a part of them as business expenses on his Schedule C. Only the remaining $ 18,773 paid to petitioner's ex-wife out of petitioner's Attorney Trust Account is really in issue. Petitioner argues that the amount thus assigned and paid to his former wife cannot be charged to him. We start with the basic proposition that income is taxed to those who earn it. Lucas v. Earl, 281 U.S. 111, 114-115 (1930); Helvering v. Horst, 311 U.S. 112, 115-117 (1940); Helvering v. Eubank, 311 U.S. 122, 124-125 (1940). This proposition has been described as "One of the primary principles of our system of income taxation". Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980). Thus, when income has been assigned to another, "The choice of the proper taxpayer revolves around the question of which person * * * in fact controls the earning of the income rather than the question of who ultimately receives the income." Id. at 1253; Vnuk v. Commissioner, 621 F.2d 1318, 1320 (8th Cir. 1980), *169 affg. T.C. Memo. 1979-164. In the instant case, there is no dispute as to whose efforts produced the income here at issue. The parties stipulated that "$ 42,706.00 were disbursed to the petitioner's Attorney Trust Account for services he performed in his capacity as Carol N. McNary's attorney." And it was out of that $ 42,706 amount that petitioner assigned $ 18,773 to his former wife, pursuant to his divorce and property settlement. There is nothing in the record to suggest that the assigned income was earned by any person other than petitioner. Nor has petitioner even attempted to argue otherwise. Since the assigned income was clearly earned by petitioner, he is taxable on the assignment of it, pursuant to the principle established in Lucas v. Earl, supra.
Petitioner disputes the application of Lucas v. Earl, supra, by emphasizing that his right to share in the lawsuit recovery was contingent upon the plaintiffs' recovery of damages against Dr. Berghan. He relies heavily on two cases, Jones v. Commissioner, 306 F.2d 292 (5th Cir. 1962), revg. T.C. Memo. 1960-115, *170 and Cold Metal Process Co. v. Commissioner, 247 F.2d 864 (6th Cir. 1957), revg. 25 T.C. 1333 (1956). However, both of those cases are distinguishable, because in both Jones and Cold Metal Process Co., the taxpayers assigned not only their legal rights in the pending litigation but also full control of continuing the litigation. In contrast, petitioner continued to provide his services as an attorney and thereby controlled the malpractice litigation involving Dr. Berghan even after he assigned part of his stake in the outcome of that litigation to his ex-wife. Moreover, in Jones and Cold Metal Process Co., the assignors were not attorneys performing legal services but rather the plaintiffs on whose behalf the legal claims were prosecuted. The assignments by the taxpayers in those cases involved something much more nearly resembling intangible property rights than compensation earned through the performance of personal services. This distinction between assignments of rights to income producing property, on the one hand, and assignments of the income itself, on the other, has long been recognized by the Supreme *171 Court. Harrison v. Schaffner, 312 U.S. 579, 582-583 (1941); Helvering v. Horst, 311 U.S. 112, 118-119 (1940); Blair v. Commissioner, 300 U.S. 5, 12-14 (1937). And it was an integral part of the Court of Appeals' decision in Cold Metal Process Co. v. Commissioner, supra at 871, where the Court noted: This case is not the type of case under consideration in Helvering v. Horst, supra, Helvering v. Eubank, supra, Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055, and other similar cases. Those cases involved a gift of income payable in the future, as distinguished from a gift of income producing property where the donor relinquishes to the donee not merely the income which is payable in the future, but also complete ownership and control of the property which produces the income. * * * In the present case there was no retention by Cold Metal of any right, title or interest of any kind in the *172 patents transferred to the Trustee. Both the income producing property and the income therefrom were transferred in their entirety and unconditionally to the Trustee. [Citations omitted.]
Petitioner, on the other hand, assigned compensation earned through the performance of his services as an attorney. The fact that his stake in the lawsuit was contingent on the outcome of future events does not make it any less compensatory. Cf. Wilkinson v. United States, 157 Ct. Cl. 847, 304 F.2d 469, 473-474, 477 (1962) (Justice Reed, concurring on this issue). In short, petitioner transferred personal service income and not income producing property to his ex-wife. An examination of the underlying facts in Lucas v. Earl, supra, is instructive. The assignment of earnings in that case was made in an agreement between husband and wife, executed in 1901, long before the enactment in 1913 of the first Federal income tax law under the Sixteenth Amendment, and was obviously not intended as a tax saving device. Moreover, it was an assignment that was made with consideration, since each spouse agreed to give *173 to the other through the medium of a joint tenancy "any property either of us now has or may hereafter acquire . . . in any way, either by earnings (including salaries, fees, etc.), or any rights by contract or otherwise, during the existence of our marriage". Lucas v. Earl, 281 U.S. at 113-114. (Emphasis added.) The husband was apparently an attorney, and at issue was the taxability of his salary and attorney's fees earned by him in 1920 and 1921. The Supreme Court held that such personal earnings, "salary and attorney's fees," came within the broad language of section 213(a) of the Revenue Acts of 1918 and 1921, which provided for the inclusion in gross income of "income derived from salaries, wages, or compensation for personal service".[5] Revenue Act of 1918, ch. 18, tit. II, 40 Stat. 1057, 1065; Revenue Act of 1921, ch. 136, tit. II, 42 Stat. 227, 237-238. In so holding, the Court treated the husband's salary and fees as his personal earnings which were taxable to him rather than to his assignee-wife, notwithstanding the fact that such earnings had been assigned to her in a year long before realization. And in referring to "fees" there *174 is no suggestion whatsoever that the Court intended to exclude "contingent fees," particularly in view of its statement in sweeping terms in a related context that "this case is not to be decided by attenuated subtleties." Lucas v. Earl, 281 U.S. at 114. We sustain the Commissioner's inclusion of all of petitioner's 1987 earnings in his gross income. 2. Additions to Tax
The Commissioner determined additions to tax against petitioner for the year 1987, pursuant to sections 6651(a) (late filing), 6653(a)(1)(A) and (B) (underpayment attributable to negligence or intentional disregard of rules or regulations), and 6661 (substantial understatement of income tax). As with respect to other issues, petitioner has the burden of proving the Commissioner's determination to be incorrect. Rule 142; Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), *175 affg. T.C. Memo. 1982-337; Neubecker v. Commissioner, 65 T.C. 577, 586 (1975). Petitioner has presented no authority to dispute the imposition of the additions to tax determined by the Commissioner. On brief, he devotes only a single sentence to the issue, in which he states "I believe that any penalties asserted by the IRS should be waived and/or rescinded, because the taxes on the income in question have already been paid by my former wife." (Pet. Op. Brief at p.9) As held above, it was petitioner who bore responsibility for paying the tax on the income which he assigned to his ex-wife. Petitioner is not absolved of that responsibility simply because his former wife allegedly included income properly taxable to him on her own tax return. Moreover, we note that petitioner on brief ironically undermines his own theory by admitting that his former wife later filed a Claim for Refund of the taxes. Since the Commissioner's determination is presumptively correct, and since petitioner has failed to carry his burden to disprove the correctness of the Commissioner's additions to tax, the Commissioner's imposition of the additions *176 to tax is sustained. Decision will be entered under Rule 155. Footnotes
1. Except as otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The $ 42,706 check was written by Gridley Investment Company (Gridley), which served as escrow agent for petitioner and the McNarys in the McNarys legal action against Dr. Berghan. The check was made payable to "Richard Kochansky, Trust Account" and was dated January 4, 1988. However, the parties have stipulated that it was "in December of 1987" that the $ 42,706 amount was "disbursed to the petitioner's Attorney Trust Account".↩
3. Nothing in the record establishes that Carol "Peterson" is the same person as Carol A. Kochansky, petitioner's former wife. However, it is clear from the parties' briefs that there is no dispute on this point.↩
4. There was a $ 134 discrepancy between the amount paid into petitioner's Attorney Trust Account ($ 42,706) and the amount reflected in the Commissioner's deficiency notice ($ 42,840). An exhibit before us discloses that Gridley Investment Company, the escrow agent for petitioner and the McNarys, was paid exactly $ 134 for its escrow services. It would therefore appear that the $ 134 difference reflects an amount which Gridley deducted for escrow services before disbursing the balance remaining in the escrow account to petitioner's Attorney Trust Account.↩
5. The comparable language of section 61(a) of the Internal Revenue Code↩, involved herein, is, if anything, even more inclusive.