T.C. Memo. 1996-48


UNITED STATES TAX COURT


ERIC A. AND JANE C. LANIGAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5735-94.          Filed February 12, 1996.


Eric A. Lanigan, pro se.

Reginald R. Corlew, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARKER, Judge:  Respondent determined the following
deficiencies, additions to tax, and penalties:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662 |
|------|-----------|-------------|----------|
| 1990 | $ 4,919 | $2,274 | $  984 |
| 1991 | 14,569 | 3,644 | 2,914 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] the only remaining issue is whether petitioners are liable for the accuracy-related penalty under section 6662 for the taxable years 1990 and 1991.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and the exhibits attached thereto are incorporated herein by this reference.

Petitioners Eric A. and Jane C. Lanigan resided in Winter Park, Florida, at the time they filed their petition in this case. Petitioner in the singular will refer to petitioner Eric A. Lanigan.

During 1989 and 1990, petitioners were having a house built. The cost of the house exceeded the amount they had budgeted for it, depleting petitioners' assets. Shortly after they moved into the house, the builder disappeared, and petitioners received notice of mechanic's liens on the house in the amount of approximately $35,000.

---

[1] Petitioners have conceded the deficiencies and the additions to tax for late filing under sec. 6651(a)(1) for both 1990 and 1991. Respondent has also conceded some income and deduction items; thus, a recomputation of the deficiencies and additions will be necessary.

In the years 1990 and 1991, petitioner was a financial planner. He received compensation from multiple sources such as insurance and investment companies. Petitioner also paid commissions to other individuals for which he was entitled to business expense deductions. In 1990, petitioner received compensation from at least six sources. In 1991, he received compensation from 15 sources. Some of petitioner's compensation was reported on Forms W-2 and some on Forms 1099. In each year, petitioner received more than one income statement from at least one company.[2]

Petitioners filed for, and were allowed, an extension of time to file their Federal income tax return for taxable year 1990, extending the due date to October 15, 1991. Their 1991 return was due on April 15, 1992. Both returns were filed on October 19, 1992.

Sometime prior to October 19, 1992, petitioners received a letter from the Internal Revenue Service (IRS) requesting petitioners to bring in their records at a specified time for purposes of preparing a return. Just prior to the scheduled meeting, petitioner filled out portions of the returns (Forms

[2] In 1990, petitioner received two Forms 1099 from Security Life of Denver, and both a Form 1099 and a Form W-2 from New England Mutual Life Insurance Co. The Form 1099 from Gordon Anthony for 1990 is marked "corrected", indicating a previous incorrect form had been issued. In 1991, petitioner received both a Form 1099 and a Form W-2 from New England Mutual Life Insurance Co. and two Forms W-2 from Provident Mutual Life Insurance Co.

1040) for 1990 and 1991, and both petitioners signed these Forms 1040 and dated them October 19, 1992. Petitioner was uncertain of the proper treatment of his earnings reported on the Forms W-2 as compared to the nonemployee compensation reported on the Forms 1099, but he believed that any questions would be resolved during the meeting.

On or about October 19, 1992, petitioner met with an IRS representative in response to the IRS letter; petitioner's wife did not attend the meeting. The IRS representative had computer printouts of IRS records. She revised some of petitioner's figures and wrote in others.

For 1990, the IRS representative revised Line 7 wages of $144,707.23 to zero, not including any Form W-2 income. She prepared or completed two Schedules C to compute Line 12 business income. On one Schedule C she listed the $60,263.40 W-2 wage income and no expenses; on the other Schedule C that petitioner had partially filled out, the Forms 1099 nonemployee compensation was listed as gross receipts of $83,173.97. For 1991, she entered the Form W-2 income in Line 7 and used petitioner's Schedule C expenses to compute Line 12 business income. The IRS representative completed Schedules SE Self-Employment Tax for both 1990 and 1991.

The following charts summarize selected information from the Forms W-2 and 1099 attached to the returns, the returns as partially filled out by petitioner (original returns), and as

revised or completed by the IRS representative (revised returns).

For each year what is described as the original return and what

is described as the revised return is the same document; i.e.,

the Form 1040 signed by petitioners and filed with the IRS on

October 19, 1992:

Taxable Year 1990

| | | |
|---|---|---|
| Form W-2 | $ 60,263.40 | |
| Forms 1099 | - 83,262.91 | |
| Total Comp. | $143,526.31 | |

| | Original Return | Revised Return |
|---|---|---|
| Wages | [1] $144,707.23 | $ 0.00 |
| Interest | 285.48 | 285.48 |
| Business Income | (45,472.50) | 97,974.87 |
| Total | $ 99,520.21 | $98,260.35 |
| Adj. Gross Inc. | [2] $ 99,519.98 | $98,260.35 |
| Sched. C | | |
| Gross Receipts | $ | [4] $143,437.37 |
| Total Expenses | [3] (45,472.50) | (45,462.50) |
| Net Profit | $ | $ 97,974.87 |

[1]The record does not explain the source of this $144,707.23 figure that petitioner placed on the return.

[2]This figure is $.23 less than the above figure; there is no explanation for this discrepancy.

[3]Petitioner partially filled out one Schedule C with the total expenses as indicated here; the correct total of the listed expenses is $45,462.50. On that Schedule C, gross receipts was listed as $83,173.97 and net profit as $37,711.47. It is uncertain who wrote in these figures. The IRS representative completed a second Schedule C showing gross receipts of $60,263.40 (the W-2 income) and zero expenses. We note that the $83,173.97 is exactly $88.94 less than the nonemployee compensation shown on the Forms 1099 attached to the return as filed with the IRS.

[4]This figure represents the combined gross receipts on the two Schedules C: $60,263.40 of W-2 wage income and

$83,173.97 of the $83,262.91 income reported on the Forms 1099 attached to the return as filed with the IRS.  See supra n.3.  Again this $143,437.37 is exactly $88.94 less than the total of the Forms 1099 and W-2 attached to the return as filed with the IRS.

Taxable Year 1991

Forms W-2              $39,548.06
Forms 1099              12,875.24
  Total Comp.         $52,423.30

|  | Original Return | Revised Return |
|---|---|---|
| Wages | [1] $45,123.33 | $39,548.06 |
| Interest | 149.57 | 149.57 |
| Business Income | (9,990.95) | 2,884.29 |
| Self-Employment Tax |  | (203.77) |
| Total | $35,281.95 | $42,378.15 |
| Adj. Gross Inc. | $35,281.95 | [2] $42,138.58 |
| Sched. C |  |  |
|   Gross Receipts | $ | [3] $12,875.24 |
|   Total Expenses | (9,990.95) | (9,990.95) |
|     Net Profit | $ | $ 2,884.29 |

[1]The record does not explain the source of this $45,123.33 figure that petitioner placed on the return.

[2]There is no explanation as to why this figure is $239.57 less that the preceding figure.  In any event, with the five personal and dependency exemptions claimed by petitioners and with Schedule A itemized deductions of $38,918.12, petitioners' return reported no taxable income for 1991, showing instead a negative figure of $7,529.

[3]It appears that the IRS representative entered the $12,875.24 in gross receipts and computed the net profit at $2,884.29.

Attached to petitioners' 1990 return as filed were four Forms 1099 and one Form W-2; attached to the 1991 return as filed were four Forms 1099 and three Forms W-2.  The revised figures used by the IRS representative were generally the figures shown

on these Forms W-2 and 1099 attached to the returns as filed.  On each of the Forms W-2 attached to the returns, the box indicating petitioner was a statutory employee was checked.

It is unclear whether the IRS representative, in completing the returns, used the records provided by petitioner or solely information she had available from IRS records.  The IRS representative asked petitioner few questions, if any, and indicated to him that the IRS had records of his income.  Petitioner knew that Form 1099 information is sent to the IRS, and he believed the IRS records present at the meeting contained information regarding his Forms 1099 income.  However, he took no steps to verify if that were the case.  There is no evidence that the IRS representative had available to her at that meeting any additional Forms 1099 or information about the items of unreported income involved in this case.

Petitioner did not review the returns after the IRS representative completed them and informed petitioner of the amount owed.  He does not remember whether he was given copies of the returns at that time; he does not remember exactly what records he took with him to the meeting.  What he does remember is being told that he owed over twenty thousand dollars including interest, that that amount was due within a 10-day to 2-week period, and that if that amount was not paid promptly, he need not worry about his house because it would belong to the Government.  Petitioner borrowed money to pay the taxes and

apparently paid the amounts reflected on the returns as filed.[3]

On January 28, 1993, respondent selected petitioners' returns for audit.  Income from numerous Forms 1099 had been omitted from the returns, particularly the return for the taxable year 1991.  As a result of the audit, the notice of deficiency increased (decreased) petitioners' income by the following amounts:

| Item | 1990 | 1991 |
|------|------|------|
| Schedule C | $16,034 | $63,502 |
| Interest income | | 17 |
| Self-Employment tax | | (1,907) |
| Itemized deductions | | 113 |
| | | |
| Total adjustments | $16,034 | $61,725 |

Respondent also determined additional self-employment tax of $4,222 for the taxable year 1991.  Petitioner filed a petition in this Court challenging the deficiencies, additions to tax, and penalties determined in the notice of deficiency.

Shortly before trial petitioners stipulated and agreed to the following items of unreported income.  In the taxable year 1990, petitioners received the following income which was omitted from their tax return for that year:

---

[3]The record does not disclose how much tax and interest petitioners in fact paid or when they made such payment.  The notice of deficiency indicates that $15,646 and $408 for the taxable year 1990 and 1991, respectively, were the total taxes shown on the returns as filed.  The $408 for 1991 was self-employment tax.

| Source | Amount |
|---|---|
| Provident Mutual | $10,581 |
| Gordon Anthony | 5,047 |
| Stuart and Florence Bellus | 199 |
| Variable Investment Plans, NEC | 888 |
| Total | $16,715 |

In the taxable year 1991, petitioners received the following nonemployee compensation that was omitted from their tax return for that year.

| Source | Amount |
|---|---|
| Ernest Beccaris | $14,751 |
| Anthony Mastrangelo | 118 |
| North American Co. | 8,670 |
| Life U.S.A. Insurance | 7,999 |
| American Association for Secured Planning | 1,400 |
| Fourth Financial Services | 24,780 |
| Rex Huffman | 2,324 |
| Provident Life | 1,020 |
| Palumbo Partners | 2,136 |
| Pan American Life | 4,747 |
| Security Life | 8,314 |
| Total | $76,259 |

Of these amounts of unreported income for 1991, respondent now concedes that $4,335 of the $8,670 from North American Company and $12,518.45 of the $24,780 from Fourth Financial Services were "assigned" to other persons; i.e., were paid as commissions to those other persons and hence are deductible by petitioner as business expenses.[4]  Petitioners have now conceded

---

[4]In other words, while the assigned amounts are includable in petitioner's income, he is entitled to a business expense deduction in an equal amount.  See Helvering v. Eubank, 311 U.S. 122 (1940); Bird v. Commissioner, T.C. Memo. 1962-74.

the deficiencies and the delinquency additions for both years. Respondent has since conceded that the $5,047 from Gordon Anthony for the taxable year 1990 was already included in the $5,179.06 previously reported from the corrected Form 1099 petitioner received from Gordon Anthony. See supra note 2.

## OPINION

Section 6662 imposes an accuracy-related penalty of 20 percent of the underpayment of tax required to be shown on a return where the underpayment is attributable to negligence or disregard of rules or regulations or to any substantial understatement of income tax. Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence is strongly indicated where a taxpayer fails to include on an income tax return an amount of income shown on an information return such as a Form 1099. Sec. 1.6662-3(b)(1)(i), Income Tax Regs. Disregard includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

Apparently, in the notice of deficiency, the commissions of $12,518 have already been deducted from the $76,259 to arrive at the amount of unreported Schedule C income of $63,502. However there appears to be a discrepancy of $239 that perhaps can be resolved in the Rule 155 proceedings.

A substantial understatement of income tax is an understatement which exceeds the greater of (1) 10 percent of the tax required to be shown on the return for the taxable year, or (2) $5,000. Sec. 6662(d)(1)(A). The understatement shall be reduced by that portion of the understatement attributable to the tax treatment of any item if (1) there is or was substantial authority for such treatment, or (2) the relevant facts affecting the item's tax treatment were adequately disclosed with the return and there is a reasonable basis for the tax treatment. Sec. 6662(d)(2)(B).

The accuracy-related penalty will not be imposed with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Sec. 6664(c). The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Id.

Petitioner argues that it was not his intention to understate his income or avoid paying taxes. He admits that he gave a higher priority to the financial problems surrounding the construction of his house than to filing his returns and that he is responsible for the late filing of the returns and for payment

of the deficiencies. However, he asserts that he cooperated fully with respondent in the preparation of the returns, that he took in the records that he had at that time, and that he made payment of the taxes as computed by the IRS representative by the date she specified.

Generally, the taxpayer cannot avoid the duty of filing accurate returns by placing responsibility on a tax return preparer. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). Reliance on the advice of a professional does not necessarily demonstrate reasonable cause and good faith, unless under all the facts and circumstances, such reliance was reasonable and the taxpayer acted in good faith. Sec. 1.6664-4(b)(1), Income Tax Regs. Where the taxpayer claims reliance on an accountant who prepared the taxpayer's return, the taxpayer must establish that the correct information was provided to the accountant and that the item incorrectly claimed or reported in the return was the result of the accountant's error. Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978); Enoch v. Commissioner, 57 T.C. 781, 803 (1972).

Here, the tax preparer was not petitioners' accountant but an IRS representative. He reasonably relied on her expertise as a tax preparer. Petitioner believed from the statements made by the IRS representative that the IRS records contained his income information. However, he took no steps to verify those records.

There is simply no evidence that the IRS representative had available to her at that time any more information than that which was filed with petitioners' returns; namely, some but not all of petitioners' Forms W-2 and 1099. Petitioner could not say what records he took to the meeting with the IRS representative. He certainly did not suggest that he had with him at that time the Forms W-2 and 1099 for the unreported income. For 1990 there were three items of unreported income totaling $11,668; for 1991 there were 11 items of unreported income totaling $76,259.

The IRS representative slightly reduced petitioners' income for the taxable year 1990. While the IRS representative may have made some minor errors in some of the revisions she made to the partially filled-in Form 1040 for 1990, she accounted for the income for all of the Forms W-2 and 1099 that were filed with the return, except for $88.94. The IRS representative's minor computational errors, however, have nothing to do with the problem in this case, the unreported income. Without verifying what information the IRS representative had available to her at that time and without showing that she knew about these items of unreported income, petitioners cannot shift their own responsibilities to her shoulders. They were negligent in not maintaining proper records of their W-2 and Form 1099 income. They were negligent in failing to assure that the return preparer, albeit an IRS employee, had the necessary information

to prepare their returns properly.  The notice of deficiency determined a section 6662 penalty for 1990 for negligence, not for a substantial understatement of income tax.[5]  We hold that petitioners are liable for the accuracy-related penalty for the taxable year 1990 under section 6662(b)(1).

Nearly all of the unreported income for 1991 stemmed from petitioner's financial planning business.  The 1991 return as filed reported Form 1099 nonemployee compensation of only $12,875.24.  Form 1099 nonemployee compensation of $76,259 was omitted from that return, an omission of 85 percent of such income.  Where the omission of income is so great, we cannot find that petitioner's reliance on the IRS representative for the preparation of the 1991 return was reasonable.  Petitioner was negligent.  Petitioner was a financial planner and as such knew or should have known that he was failing to report most of his income from that business.  The understatement of income tax was clearly a substantial understatement.  We hold petitioners are liable for the accuracy-related penalty for the taxable year 1991 under section 6662(b)(2).

---

[5]It appears that the amount of the understatement even as determined in the deficiency notice did not exceed the greater of (1) 10 percent of the tax required to be shown on the return or (2) $5,000.  Sec. 6662(d)(1)(A).

In keeping with the above holdings and the parties' concessions,

<u>Decision will be entered</u>

<u>under Rule 155.</u>